UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 3 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARCA-TEL, S.A. DE C.V., § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. B-02-034 |
| vs. § | |
| § | |
| THOMAS K. GARNER, WESTEL, § | |
| INC.; and WESTEL INTERNATIONAL § | |
| INC., § | |
| Defendants. | |

## DEFENDANTS' SURREPLY REGARDING MOTION TO TRANSFER VENUE AND NOTICE OF ADDITIONAL NEW AUTHORITY

TO THE HONORABLE UNITED STATES DISTRICT JUDGE TAGLE:

Tommy K. Garner, Westel, Inc. and Westel International, Inc. ("Defendants"), in further support of their motion to transfer this case to the Western District of Texas, Austin Division ("the Western District") present to the Court the following new additional authority.

**A new Fifth Circuit case further favors transferring this matter to the Western District.**

1.   On September 10, 2002, the Fifth Circuit issued an opinion styled *In Re: Horseshoe Entertainment*, No. 02-30682, 2002 WL 31012809 (5th Cir. La., Sept. 10, 2002) (Ex.1) addressing some of the applicable factors favoring a transfer of this matter to the Western District.

   A.   **The location of documents.**

2.   *Horseshoe Entertainment* indicates that the location of books and records should be considered in determining the propriety of transfer. 2002 WL 31012809, at *5. Although *Horseshoe Entertainment* deals with a specific venue statute for employment purposes, the opinion supports transferring venue when the records are maintained and administered in the transferee district, in this case the Western District.

### B. Unlikely undue delay or prejudice.

3. The Fifth Circuit stated that this factor might be relevant "in a rare and special circumstances." *Horseshoe Entertainment*, 2002 WL 31012809, at *5. Plaintiff has failed to bring any such evidence or reason substantiating the claim that a transfer to the Western District would entail any undue prejudice or delay in this case.

### C. The ease of obtaining attendance of witnesses.

4. Transfer is appropriate where a district court's subpoena power could be clearly facilitated, as in this case in the Western District. *Horseshoe Entertainment*, 2002 WL 31012809, at *6.

### D. Plaintiff's choice of forum.

5. Although Plaintiff's choice is entitled to some deference, this factor is neither conclusive nor determinative. *Horseshoe Entertainment*, 2002 WL 31012809, at *5.

### E. Location of counsel is irrelevant and improper for consideration.

6. Location of counsel is irrelevant and improper for consideration. *Horseshoe Entertainment*, 2002 WL 31012809, at *5.

### REQUEST FOR RELIEF

For these additional reasons, Defendants request that the Court transfer this lawsuit to the Western District of Texas, Austin Division, and grant Defendants any and all other just relief.

Respectfully submitted,

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Patton G. Lochridge
State Bar No. 12458500
Southern District Bar No. 7619
Carlos R. Soltero
State Bar No. 00791702
Southern District Bar No. 18690
1300 Capitol Center
919 Congress Avenue
Austin, Texas 78701
(512) 495-6000/(512) 495-6093 FAX

By: _____
    Carlos R. Soltero

RODRIGUEZ, COLVIN, & CHANEY, L.L.P.
Mitchell C. Chaney
State Bar No. 04107500
Southern District Bar No. 1918
1201 East Van Buren
Brownsville, Texas 78520
(956) 542-7441/(956) 541-2170 FAX
ATTORNEYS FOR TOMMY K. GARNER,
WESTEL, INC., and
WESTEL INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded on September 18, 2002, to the following parties of record in the manner indicated below:

| | |
|---|---|
| Edward F. Fernandes<br>Brobeck, Phleger & Harrison L.L.P.<br>4801 Plaza on the Lake<br>Austin, Texas 78746 | Via Fax and Certified Mail - RRR |
| James DeAnda<br>Solar & Associates L.L.P.<br>Williams Tower<br>2800 Post Oak Blvd., Suite 6300<br>Houston, Texas 77056 | Via Certified Mail - RRR |

_____
Carlos R. Soltero

```
Citation                    Search Result         Rank 1 of 4         Database
2002 WL 31012809                                                      CTA5
   --- F.3d ---
(Cite as: 2002 WL 31012809 (5th Cir.(La.)))
```

Only the Westlaw citation is currently available.

United States Court of Appeals,
Fifth Circuit.
In re: HORSESHOE ENTERTAINMENT, Petitioner.
No. 02-30682.
Sept. 10, 2002.

Former employee sued employer under Title VII and Americans with Disabilities Act (ADA). Employer moved to transfer. The United States District Court for the Middle District of Louisiana, Ralph E. Tyson, J., denied motion. Employer petitioned for writ of mandamus, seeking reversal of denial of transfer motion. The Court of Appeals, DeMoss, Circuit Judge, held that: (1) Court of Appeals could review denial of transfer motion via mandamus petition; (2) District Court should have granted transfer motion, since factors weighing in favor of transfer heavily outweighed those weighing against, and (3) Title VII venue provision permitting suit in "any judicial district in the state in which the unlawful employment practice is alleged" did not permit suit in district where employer had no presence.
  Petition granted.
  Benavides, Circuit Judge, filed dissenting opinion.

[1] Federal Courts ⚖=528

170Bk528

[1] Federal Courts ⚖=579
170Bk579

Although review of district court's denial of motion for transfer in employment discrimination action was inappropriate under statute governing interlocutory appeals, Court of Appeals could review denial via petition for writ of mandamus; transfer statute did not prohibit review. 28 U.S.C.A. §§ 1292, 1404(a), 1651.

[2] Federal Courts ⚖=106
170Bk106

District court should have granted employer's motion for transfer of employment discrimination action based on location of employment, witnesses, and alleged violations, rather than concluding that factors weighing in favor of and against transfer were evenly balanced with "location of counsel," possibility of delay, and employee's forum choice weighing against; location of counsel was irrelevant, district court should have considered factor of location of books and records which weighed in favor, there was no explanation of and no evidence supporting "delay" factor, and forum choice, which was of doubtful validity,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works



2002 WL 31012809
(Cite as: 2002 WL 31012809 (5th Cir.(La.)))

should have been accorded less than decisive weight. 28 U.S.C.A. § 1404(a).

[3] Federal Courts ⚖105
170Bk105

Plaintiff's choice of forum is clearly a factor to be considered on motion to transfer, but in and of itself is neither conclusive nor determinative. 28 U.S.C.A. § 1404(a).

[4] Federal Courts ⚖88
170Bk88

Title VII venue provision permitting employee to sue in "any judicial district in the state in which the unlawful employment practice is alleged to have been committed" did not permit employee who lived and worked in state's judicial district A and had allegedly suffered employment discrimination only in district A to sue in district B, where employer had no connection or involvement. Civil Rights Act of 1964, § 706(f)(3), as amended, 42 U.S.C.A. § 2000e-5(f)(3).
  Murphy J. Foster, III, Yvonne Inez Reed, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Petitioner.
  Jill Leininger Craft, Craft & Craft, George Gregory Caballero, Baton Rouge, LA, for Caroline Rogers, Plaintiff-Respondent.
  Petition for Writ of Mandamus to the United States District Court for the Middle District of Louisiana.

  Before BARKSDALE, DeMOSS and BENAVIDES, Circuit Judges.


  DeMOSS, Circuit Judge:
*1 Horseshoe Entertainment ("Horseshoe"), a Louisiana partnership having its domicile and principal place of business in Bossier City, Louisiana, petitions this Court to issue a Writ of Mandamus to reverse a decision of the United States District Court for the Middle District of Louisiana (the Middle District Court) in Civil Action No. 01-295 on its docket, denying a motion by Horseshoe to transfer the venue of a Title VII sex discrimination/ADA case to the Shreveport Division of the United States District Court for the Western District of Louisiana (the Shreveport Division Court) for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a). Caroline W. Rogers ("plaintiff") filed such suit against Horseshoe on April 17, 2001, in the Middle District Court alleging that she was subjected to discrimination and harassment while employed with Horseshoe in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). On June 13, 2001, prior to filing any answer, Horseshoe filed its motion to transfer pursuant to § 1404(a) and such motion was timely and of sufficient content to prevent waiver of the venue issue when Horseshoe subsequently filed its answer in such proceeding. In its motion to transfer, Horseshoe asserts the following uncontested facts and grounds for its motion:

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *1 (5th Cir.(La.)))

A. As reflected by plaintiff's sworn complaint:
1. Plaintiff is a resident of Caddo Parish, Louisiana, which is within the Shreveport Division of the Western District of Louisiana;
2. Plaintiff was employed by Horseshoe in Bossier City, Louisiana, which is also within the Shreveport Division of the Western District of Louisiana;
3. Plaintiff was subjected to certain acts of sexual harassment by other employees of Horseshoe and all of these acts occurred in Bossier City which is also within the Shreveport Division of the Western District of Louisiana;
4. Plaintiff suffers from a disability (diabetes) and Horseshoe failed to make reasonable accommodations for her disability and harassed her because of such disability; and all such conduct occurred in Bossier City or the greater Shreveport area within the Shreveport Division of the Western District of Louisiana;
5. The alleged conduct of harassment and discrimination caused plaintiff to be constructively discharged from her employment on July 17, 2000, which occurred in Bossier City, Louisiana, within the Shreveport Division of the Western District of Louisiana; and
6. As a result of such alleged conduct, plaintiff sustained severe emotional distress and damages in the greater Shreveport area which is within the Shreveport Division of the Western District of Louisiana.
B. Almost all of the potential witnesses for Horseshoe reside in the areas of Bossier City and Shreveport, Louisiana, all within the Shreveport Division of the Western District Court.
*2 C. Almost all of plaintiff's potential witnesses reside within the Bossier City or Shreveport area within the Shreveport Division of the Western District Court.
D. All employment records related to plaintiff's employment by Horseshoe are maintained in the offices of Horseshoe in Bossier City, Louisiana, within the Shreveport Division of the Western District.
E. But for the alleged conduct herein and the alleged constructive discharge, the plaintiff would have continued to work for Horseshoe in Bossier City, Louisiana, within the Shreveport Division of the Western District.
F. The distance between Baton Rouge, Louisiana, where the Middle District Court would conduct this litigation if it is not transferred, and the Shreveport/Bossier City area, where the witnesses and parties reside, is more than 200 miles; and is therefore beyond the 100 mile distance in which the automatic subpoena power of a district court can be used to compel attendance of witnesses.
[1] As an initial point in her response filed with this Court to Horseshoe's petition for mandamus, the plaintiff questions whether this Court has jurisdiction under the All Writs Act (28 U.S.C. § 1651) to review the Middle District Court's decisions on the motion to transfer and contends that since Horseshoe did not even seek a certification from the Middle District Court pursuant to 28 U.S.C. § 1292, the order on the motion to transfer venue may not be reviewable at all. In essence, the plaintiff's contention is that the decision of the Middle District Court on the motion to transfer venue is not reviewable in any way by this Court. We disagree for two reasons. First of all, we operate on the presumption that if Congress wants to make a decision by a

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *2 (5th Cir.(La.)))

district court unreviewable by a Circuit Court, it certainly knows how to do that. See 28 U.S.C. § 1447(d) which states that an order remanding a case to a state court from which it was removed "is not reviewable on appeal or otherwise." There is no such similar provision in the general venue statutes nor in the special venue statute applicable in this case.

Secondly, we think plaintiff misreads our Circuit's precedents. In Garner v. Wolfinbarger, 433 F.2d 117, 120 (5th Cir.1970), after first holding "that § 1292(b) review is inappropriate for challenges to a judge's discretion in granting or denying transfer under § 1404(a)," the panel went on to state:

> This Circuit has recognized the availability of mandamus as a limited means to test the district court's discretion in issuing transfer orders. Ex Parte Blaski, 245 F.2d 737 (5th Cir.), cert. denied, 355 U.S. 872, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957); Ex parte Chas Pfizer & Co., 225 F.2d 720 (5th Cir.1955); Atlantic Coast Line RR v. Davis, 185 F.2d 766 (5th Cir.1950); cf. Ex parte Deep Water Exploration Co., supra.

The petition for writ of mandamus in Garner was denied because there was no showing of "any failure by the district judge to correctly construe and apply the statute or to consider the relevant factors incident to ruling upon a motion to transfer or clear abuse of discretion on his part" which were the standards of review set in Pfizer, supra. While the court in Garner commented that "in the voluminous litigation over transfer orders, only a few litigants have surmounted the formidable obstacles and secured the writ," we take that as a simple expression of the adage that "exceptions prove the rule." There is no way that this Court can determine whether the Pfizer standards have been met except by reviewing carefully the circumstances presented to and the decision making by the Middle District Court; and for the reasons hereinafter set forth the errors of the Middle District Court are sufficient to satisfy the Pfizer standards and to justify the issuance of the writ of mandamus.

*3 In addition to the general statutory provisions regarding venue set forth in Chapter 87 of Title 28 of the U.S. Code (28 U.S.C. § 1391, et seq.), Congress has adopted special venue provisions for the type of litigation involved in this case (claims under Title VII and the ADA) which state as follows:

> (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3). We note that the last sentence of this special venue provision makes express cross-reference to §§ 1404 and 1406 of Title 28 indicating clearly Congress' intention that the provisions of §§ 1404 and 1406

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *3 (5th Cir.(La.)))

would also be applicable in this case.

The provisions of 28 U.S.C. § 1404(a), upon which Horseshoe relies in its motion for transfer, state as follows:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." While the Middle District Court did not expressly address this issue, in our view there is no genuine controversy therein. Plaintiff's suit might have been originally filed in the Shreveport Division of the Western District because (1) that is where "the unlawful employment practices are alleged to have been committed," (2) that is where "the employment records relevant to such practice are maintained and administered," (3) that is where "the aggrieved person would have worked but for the alleged unlawful employment practice," and (4) that is where "the respondent has his principal office." The critical issue in this case, therefore, is whether the "convenience of parties and witnesses, in the interest of justice" requires a district court to transfer this civil action to the Shreveport Division of the Western District.

*4 [2] For reasons not readily discernable from the record or the parties' briefing, the Middle District Court waited some 13 months until July 2002, to rule on Horseshoe's motion to transfer. As indicated earlier, Horseshoe filed its motion to transfer timely and before it filed its answer and in our view disposition of that motion should have taken a top priority in the handling of this case by the Middle District Court. When it finally did get around to ruling, the Middle District Court summarized its findings and conclusions in the following paragraph:

In considering the relevant factors, the Court finds that, since the plaintiff, the defendant and presumably the witnesses, all reside in Caddo Parish, the factors of availability and convenience of witnesses, availability and convenience of the parties, and place of alleged wrong militate in favor of the requested transfer. On the other hand, the factors of possibility of delay or prejudice if transfer is granted, the location of counsel,8 and plaintiff's choice of forum seem to dictate that the requested transfer be denied.9 Since the relevant factors appear to be evenly divided between the two alternatives, the Court finds that defendant has failed to carry its burden of establishing that justice weighs substantially in favor of the requested transfer of venue. Therefore, transfer of this litigation is not warranted and plaintiff's choice of forum will be honored.

In footnote 8, the Middle District Court pointed out that "Both parties are now represented by Baton Rouge counsel." In footnote 9, the Middle District Court indicated that it "Does not consider the factor regarding the location of books and records to be significant in the case because the implements of modern electronic imaging and document transfer and retrieval will greatly reduce, if not eliminate any inconvenience to the parties in this regard."

We think the District Court erred in concluding that the "relevant factors

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *4 (5th Cir.(La.)))

appear to be evenly divided between the two alternatives" and that in such circumstance "the plaintiff's choice of forum will be honored," for the following reasons:

*5 1. The factor of "location of counsel" is irrelevant and improper for consideration in determining the question of transfer of venue. Neither the plaintiff nor the Middle District Court favored us with a citation to any Supreme Court or Circuit Court decision recognizing the appropriateness of this factor nor have they cited any statutory text or any legislative history indicating the intention of Congress that such a factor be considered in deciding a motion to transfer. The Middle District Court erred in considering this factor and giving it equivalent weight in its decision-making process.

2. We think the Middle District Court erred in not considering "the factor regarding the location of books and records." Where relevant employment records are maintained and administered is expressly stated as a venue factor in the special venue statute and should be weighed by a District Court in "evaluating the interest of justice" aspect of the motion to transfer.

3. We think the Middle District Court erred in considering and giving weight to the factor of "possibility of delay or prejudice if transfer is granted." There is absolutely nothing in the pleadings, briefs, or records of this case from which we can determine what specifically the Middle District Court had in mind in using the vague generalities of "possibility of delay or prejudice" if transfer is granted. We recognize that in rare and special circumstances a factor of "delay" or of "prejudice" might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence. No such evidence exists here in this case and we think the Middle District Court erred by considering and giving weight to the mere "possibility" of vague and indefinite circumstances.

[3] 4. Finally, we believe the Middle District Court erred in attributing decisive weight to the plaintiff's choice of forum. We believe that it is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative. Garner v. Wolfinbarger, supra at 119. Obviously, to be considered at all, the plaintiff's choice of forum must be one which is permitted under the relevant venue statute; and we have serious doubts that the plaintiff's selection of the Middle District of Louisiana was a proper venue choice in this case. The plaintiff did not allege that "any unlawful employment practice" was committed in the Middle District of Louisiana; there is nothing in this record to indicate that relevant employment records were maintained or administered in the Middle District of Louisiana; there is nothing in this record to indicate that the plaintiff "would have worked" for Horseshoe in the Middle District of Louisiana but for the alleged unlawful employment practice and there is nothing in this record to indicate that Horseshoe had any office of any kind in the Middle District of Louisiana.

[4] Plaintiff theorizes, and the Middle District Court seems to have adopted the theory, that the phraseology of the portion of the special venue statute relating to where the unlawful employment practice occurred permits her to bring suit in any judicial district in the State of Louisiana because she alleged in her petition that the unlawful employment practice occurred in the State of

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *5 (5th Cir.(La.)))

Louisiana. Plaintiff postulates that this reading of the statutory language was intended by Congress to permit plaintiffs in employment discrimination cases to sue their employer in judicial districts in which their employer had no connection or involvement whatsoever in order to assure that "jury pools" were not tainted by the employer's presence in that district. However, neither the plaintiff nor the Middle District Court favored us with any case citation to any Supreme Court or Circuit Court case which adopts this reading of the particular statutory language nor with any citation to legislative history indicating that Congress intended to provide what plaintiffs say they intended. Plaintiff's novel and ingenious reading of the statutory language which permits the fixing of venue on a state-wide basis is completely inconsistent with the pattern and practice in the general venue statute and in other special venue statutes where venue is set on a judicial district basis depending upon the existence of facts or occurrences within that particular judicial district. Fixing venue on a state-wide basis would create a field day for forum shopping by plaintiffs.

*6 When the filing of a claim is covered by a special venue statute, as in this case, we think the venue factors set forth in that special statute are the clearest indicators of where Congress considered the best place to try an employment discrimination case. In this case those special venue factors clearly indicate that Congress thought employment discrimination controversies should be litigated in judicial districts that had direct and immediate connection with the parties, the events and the evidence bearing on their controversy. For these reasons we cannot accept the Middle District Court's interpretation of the statutory language which would support venue in the Middle District of Louisiana. Furthermore, when the statutory venue factors are each and all satisfied by one division of one judicial district, as they are for the Shreveport Division of the Western District in this case, and where the use of a district court's subpoena power could be clearly facilitated in the Shreveport Division, we think the Middle District Court clearly erred and abused its discretion in denying Horseshoe's motion to transfer to that district.

Accordingly, we grant Horseshoe's petition for a writ of mandamus, vacate the order of the Middle District Court denying Horseshoe's motion for transfer, and remand this case to the Middle District Court with instructions to enter an order transferring this case to the docket of the Shreveport Division of the Western District forthwith.

DISSENTING OPINION

BENAVIDES, Circuit Judge, dissenting:
*7 The standard for reviewing a district court's decision not to transfer venue is clear and well-settled: "[w]e review all questions concerning venue under the abuse of discretion standard." United States v. Delgado-Nunez, 295 F.3d 494, 496 (5th Cir.2002) (quoting United States v. Asibor, 109 F.3d 1023, 1037 (5th Cir.1997)). Of course, "abuse of discretion review of purely legal questions ... is effectively de novo, because '[a] district court by definition abuses its discretion when it makes an error of law.' " Delgado- Nunez, 295 F.3d at 496 (quoting Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). At issue here, however, is not a purely legal question, such as

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

DISSENTING OPINION
those contemplated in Delgado-Nunez and Koon. Rather, in deciding not to transfer the matter, the district court considered and balanced many facts and factors. Accordingly, the district court's decision should not be reviewed de novo, but rather should stand barring an abuse of discretion. [FN1]

Furthermore, the writ of mandamus is an extraordinary, seldom-used remedy--not a substitute for appeal. Indeed, the writ should issue only "in the absence of other adequate remedies when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." In re Chesson, 897 F.2d 156, 159 (5th Cir.1990) (citing In re First South Savings Association, 820 F.2d 700 (5th Cir.1987); United States v. Crawford Enterprises, 754 F.2d 1272 (5th Cir.1985)). Factors used to determine whether to issue the writ of mandamus "include whether the district court failed to construe and apply the statute correctly, whether the relevant factors incident to a motion to transfer were considered, and whether there was a clear abuse of discretion." In re Cragar Industries, Inc., 706 F.2d 503, 504 (5th Cir.1983) (citing In re McDonnell-Douglas Corp., 647 F.2d 515, 517 (5th Cir.1981)). Although it was concluded in Cragar that the district court had in fact abused its discretion, no writ of mandamus was issued and the district court was instead encouraged to reconsider its decision. See Cragar, 706 F.2d at 506. Thus, because a decision to transfer venue is governed by the abuse of discretion standard and the fact that the writ of mandamus is categorically disfavored as a remedy, the district court's decision not to transfer venue and to keep the matter in the Middle District of Louisiana must be respected in all but the most compelling circumstances.

To support its argument that the district court should have transferred the matter to the Western District of Louisiana, the majority opinion questions whether venue is proper in the Middle District. Yet, the plain meaning of the relevant special venue statute, codified at 42 U.S.C. § 2000e-5(f)(3), makes clear that venue is proper in any judicial district in any state in which the alleged discrimination occurred, which, here, includes the Middle District. See 42 U.S.C. § 2000e-5(f)(3) (noting that venue of Title VII suit lies in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice"). [FN2] Thus, given the plain meaning of the special venue statute, venue is proper in any district in Louisiana, the state in which the alleged discrimination occurred. This sound result is neither novel nor unprecedented. See, e.g., Richardson v. Alabama State Bd. of Educ., 935 F.2d 1240, 1248 n. 11 (11th Cir.1991) ("Since the alleged discrimination took place in Georgia, appellants were free to bring suit in any of the state's three federal judicial districts."); see also Garus v. Rose Acre Farms, Inc., 839 F.Supp. 563 (N.D.Ind.1993); Gilbert v. General Elec. Co., 347 F.Supp. 1058 (E.D.Va.1972). Cf. Thurmon v. Martin Marietta Data Systems, 596 F.Supp. 367 (M.D.Pa.1984).

*8 In support of issuing the writ of mandamus, the majority opinion argues that

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Page 9
2002 WL 31012809
(Cite as: 2002 WL 31012809, *8 (5th Cir.(La.)))

DISSENTING OPINION
this matter should be litigated in the Western District of Louisiana. [FN3] To be sure, this matter could have been brought properly in the Western District. Supportive of this conclusion are the facts that the Western District is (1) the place of the alleged discriminatory conduct; (2) where the employment records relevant to the alleged discriminatory conduct are located; (3) the place of the plaintiff's residence; and (4) where most of the potential witnesses reside. Other factors, however, point toward keeping the matter in the Middle District. Most significantly, transferring venue would hinder the plaintiff's ability to choose a forum and may also result in prejudice and delay in this litigation, [FN4] as some motions in this matter have been disposed of and others are currently pending, including defendant's motion for summary judgment. [FN5]
 Believing that the district court's analysis and determination not to transfer venue clearly does not rise to the level of abuse of discretion, I would deny the extraordinary remedy of mandamus.
 Accordingly, I dissent.

> FN1. It is not clear whether the majority opinion adopts this abuse of discretion standard or a more scrutinizing review. Although the penultimate paragraph of the majority opinion concludes that the district court "clearly erred and abused its discretion in denying [the] ... motion to transfer," most of the opinion addresses only whether the district court erred, not whether an error rose to the level of an abuse of discretion.
>
> FN2. It has been established that this special venue statute supersedes any general venue provision. See, e.g., Harding v. Williams *Property Co., 1998 WL 637414*, *2 n. 5 (4th Cir.1998) (unpublished disposition); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir.1993); *Johnson v. Payless Drug Stores Northwest, Inc.*, 950 F.2d 586 (9th Cir.1991).
>
> FN3. Courts traditionally have employed the following factors to determine whether to transfer venue:
> (1) Plaintiff's choice of forum.
> (2) The availability of compulsory process for the attendance of unwilling witnesses.
> (3) The cost of obtaining the attendance of willing witnesses.
> (4) The accessibility and location of sources of proof.
> (5) The location of counsel.
> (6) The relative congestion of the courts' dockets.
> (7) Accessibility of the premises to jury view.
> (8) Relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit.
> (9) The time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial.
> See *Fletcher v. Southern Pacific Transp. Co.*, 648 F.Supp. 1400, 1401 (E.D.Tex.1986) (voluminous internal citations omitted).
>
> FN4. Also perhaps relevant is the fact that the attorneys in this matter

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31012809
(Cite as: 2002 WL 31012809, *8 (5th Cir.(La.)))

DISSENTING OPINION

    are located in the Middle District--not the Western District--of Louisiana. Although attorney location is never a strong factor in the calculus to transfer venue, it can bear some weight on the venue decision. See Formaldehyde Institute, Inc. v. U.S. Consumer Product Safety Com'n, 681 F.2d 255, 262 (5th Cir.1982) (holding that attorney location was not "a significant basis for determining venue").

    FN5. It seems strange that although defendant has filed in the Middle District a motion for summary judgment, which presumably relies upon various witness affidavits, defendant, in support of its request to transfer venue, hints that those same witnesses would be unavailable for trial unless the matter is transferred to the Western District. These positions appear to be mutually exclusive.

2002 WL 31012809 (5th Cir.(La.))
END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works