IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 6 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOHN OCIE ROBERTS | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| ET.AL. | § | |
| Defendants | § | |

CITY DEFENDANTS' RESPONSE
TO PLAINTIFF'S FIRST AMENDED
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF

May it Please the Court:

COMES NOW CITY DEFENDANTS and file this their response to Plaintiff's First Amended Motion for Partial Summary Judgment and would show the Court as follows:

## I.
## NATURE OF THE CASE

The pending controversy involves the CITY OF HARLINGEN'S efforts to enforce environmental ordinances, related to the clean up of trash, debris, rubbish, and junked vehicles, after a fire devastated the structure on the lot in question. Plaintiff, the lessee of the lot on which the fire occurred, and which was cleaned up under the direction of the Environmental Health Department of the CITY, contends that the CITY deprived him of his personal property in violation of his state and federal rights without due process of law, as a result of the cleanup.

## II.
## PLAINTIFFS' ARGUMENT & ISSUES PRESENTED

The Plaintiff has alleged in his First Amended Motion for Partial Summary Judgment the following:

A. "The ordinance upon which the defendants relied in seizing and taking plaintiff's personalty from 1726 North Commerce Street, Harlingen, Cameron County, Texas, is unconstitutional, for it, as written and as applied, violates the plaintiff's due process rights, all in violation of the United States Constitution and the Constitution of State of Texas." The Plaintiff attaches as an exhibit Chapter 93, of the City of Harlingen Code of Ordinances. Therefore, it is assumed that the specific ordinance that Plaintiff is attacking is Chapter 93, the nuisance ordinance. See Plaintiffs' First Amended Motion for Partial Summary Judgment, P. 2, Sec. 1.

B. "The ordinance in question provides for arbitrary notice, which amounts to no notice at all. The ordinance allows the seizing official to choose whom to send notice to, either (a) the owner of the personalty that is to be seized, or (b) the realty owner. Nothing in the ordinance provides any guiding principles in the making of this choice, nor does the ordinance in question assure that the owner to be affected by the proposed city action, to wit the personalty owner, be given notice or afforded a hearing." See Plaintiffs' First Amended Motion for Partial Summary Judgment, P. 2, Sec. 1.

C. The allegations of Plaintiff include both a facial attack on the constitutionality of the Nuisance Ordinance, as well as an "as applied" attack.

D.  The issue presented is thus whether Chapter 93 of the City of Harlingen Code of Ordinances is facially and "as applied" constitutional.

## III.
## SUMMARY OF CITY'S ARGUMENT

The CITY'S health nuisance ordinance, codified at §93, Harlingen Code of Ordinances (hereafter simply " Chapter 93" or "Health Nuisance Ordinance" and a copy of which is attached as Exhibit A) is facially valid and therefore constitutional. Further, the health nuisance ordinance is constitutional as applied. It's focus is to maintain the health, welfare and safety of the public, which is consistent with the authority of a local government body under both Texas law as well as the U.S. Constitution.

Chapter 93 is facially valid and constitutional with respect to its notice requirements, and is not overbroad or vague. In addition, the ordinance as applied to Plaintiff, is constitutional in all regards.

For the foregoing reasons, the CITY OF HARLINGEN requests and prays for an adjudication from the Court that upholds the facial validity of this ordinance under the U.S. and Texas Constitutions.

## IV.
## LEGAL ARGUMENT & ANALYSIS

A.  **A City May Impose Reasonable Restrictions On Public Health Nuisances Under the U.S. Constitution.**

There should be little dispute that a local government has the authority to adopt ordinances designed to protect and

maintain the peace, health, safety and welfare of the general public. Similar ordinances to Chapter 93 have been held to be constitutional and a valid exercise of the police power of a City in maintaining the health and safety of the public. *Pope v. City of Houston*, 559 S.W.2d 905, 907(Tex.Civ.App.-Waco 1977, writ ref'd n.r.e)(ordinance detailing city procedure concerning nuisance caused by "weeds, brush, rubbish, or other objectionable, unsightly or unsanitary matter" held constitutional); *McDonald v. State of Texas*, 693 S.W.2d 660, (Tex.App.-Dallas) 1985; *City of Collinsville v. Seiber*, 82 Ill.App.3d 719, 403 N.E.2d 90, 94 (1980)(ordinance declaring nuisance to "permit or maintain an unsightly yard or premises where there is an accumulation or deposit of any vehicle,...junk,...waste or earth" held constitutional); *Thain v. City of Palo Alto*, 207 Cal.App.2d 173, 24 Cal.Rptr. 515, 523 (1962)(weed abatement ordinance held constitutional).

In fact, the Fifth Circuit has made clear that ordinances such as Chapter 93 are "not to be declared unconstitutional unless 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare'" *Shelton v. City of College Station*, 780 F.2d 475, 480 (5th Cir.1986). Chapter 93 has a substantial relation to the public health, safety, morals and general welfare of the public, with its enforcement designed to prevent the accumulation of conditions that constitute a health hazard, fire hazard, harbor rodents, mosquitoes, wild or rabid animals, and depreciate values of neighboring properties.

### B. Notice Requirement in Chapter 93 Does Not Violate Due Process

Plaintiff attacks the ordinance as violating due process in that it gives the city the option of noticing either the owner of the personalty on the property, or the property owner himself, and claims that this amounts to no notice at all to the property owner. However, Plaintiff clearly misreads the ordinance. Chapter 93 does not give the City the option to notice the property owner or the owner of any personalty on the property, but only calls for notice of the real property owner, the owner of the premises on which the conditions have accumulated. §93.04 reads as follows:

> "Whenever any condition described in this chapter is found to exist *on* any premises *or* real property within the city, the owner of such premises or real property shall be notified by the City...". emphasis added

Thus the ordinance only requires notice to be given to the owner of the premises, or real property, on which the junk or objectionable matter rests. Plaintiff misinterprets the term "real property" to mean the actual violative items contained on the premises. However, a clear reading of the statute, with particular reference to the use of the term on real property in the first part of this section, shows that the ordinance is referring to real property solely as land or the premises on which the violations exist. Real property and premises are used interchangeably.

Similarly designed ordinances which require the notice of only the owner of the premises have been found constitutional. In *McDonald*, the City ordinance dealing with the removal of

City Defendants' Response to Plaintiff's
Motion for Partial Summary Judgment
Brief in Support Thereof
Page 5

nuisances caused by weeds, rubbish and other objectionable matter was held to be constitutional and a proper exercise of the police power of the city even though the only person required to be noticed of the violation was the property owner or the person occupying or having control over such property. *McDonald v. State of Texas*, 693 S.W.2d 660, 661-2. Thus, the ordinance was held constitutional despite the fact that there was no requirement at all that the owner of any personalty located on the property be noticed of the violation, or that the City even attempt to identify such owner.

Although Plaintiff's "optional notice" argument misinterprets the ordinance, Plaintiff still appears to attempt to make the argument that additional notice to the owner of any personalty, or trash items, actually contained on the premises should always be required in order for such an ordinance to pass constitutional muster. As pointed out, similar ordinances without this additional notice requirement have been held constitutional.

In fact, to require a municipality to always notice *both* the owner of the property *and* the owner of whatever violative material is on the property would be impossible and completely unenforceable. Often, a municipality is faced with abandoned lots or even occupied lots, which have assorted junk, including old tires and a variety of other piled-up trash on them. There would be no conceivable way to identify who actually owned such trash, or if such trash was even owned by somebody, or was instead simply abandoned. To take Plaintiff's argument to its extreme, a municipality would be required to identify, and notice, the former owner of every junk food cup and bag that has

been discarded on a lot, rather than simply noticing the owner of the property where the trash has been left. It is common knowledge and an unfortunate fact of life that persons often continue to discard and dump trash on lots in which they have seen other trash and rubbish previously dumped. Again, Plaintiff's attack on Chapter 93 would require the City to sift through every item of trash on the lot, and attempt to identify the owner of each specific piece of trash or junk and properly notice them, before being able to have the dangerous disease and vermin-causing conditions removed.

The drafters of Chapter 93 and other ordinances similar to it throughout the country, recognized this impossible, futile, and needless task. Thus, the City is only required to notice the property owner, rather than the owner of each specific junk item or piece of trash contained on the property. Given this, a facial review of the Health Nuisance Ordinance §93 and its notice requirements, reflects that it is rationally related to a legitimate government interest, the health, safety and general welfare of the public.

Plaintiff has failed to cite one single case in which a health nuisance ordinance with notice requirements like those contained in Chapter 93 has been held to be unconstitutional on its face.

C.  **Health Nuisance Ordinance Is Not Overbroad.**

The Health Nuisance Ordinance, on its face or as applied to Plaintiff, is not overbroad. The summary judgment evidence shows that this ordinance was not applied to Plaintiff so as to penalize any speech or conduct protected by the First Amendment, but merely to remove a known health hazard. Therefore, it was not overbroad as applied to Plaintiff.

The ordinance's primary aim is the regulation of conduct, the maintenance of property, which on its face does not in any way implicate free speech rights. "[W]here conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)(statute regulating political activity of state employees not overbroad or vague on its face). Plaintiff has failed to show any substantial overbreadth of the ordinance judged in relation to its legitimate sweep. Subsequently, the ordinance is not overbroad on its face.

D. **Health Nuisance Ordinance Is Not Void For Vagueness**

Chapter 93 is not void for vagueness because "[a]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) Due process demands that laws "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and "provide explicit standards for those who apply them." *Id.*, 408 U.S. at 108-09.

In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance itself, as well as interpretations of analogous laws, keeping in mind that "[c]ondemned to the use of words, ... mathematical certainty" is unattainable. *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294. "[F]lexibility and reasonable breadth" in the language chosen is constitutionally acceptable. *Id.*

Chapter 93 is quite clear with respect to every word contained therein and the prohibitions contained therein, and it provides clear procedures for notice to those allegedly in

violation of the ordinance. Such notice was followed exactly as contained in the ordinance with respect to Plaintiff. Plaintiff's allowing of junk, rubbish and other trash to accumulate on this property falls within conduct clearly proscribed by the ordinance, thus rendering the ordinance constitutional as applied to Plaintiff, as well as on its face.

**E. Chapter 93 Applied in Constitutional Fashion With Respect to Plaintiff**

Plaintiff's attack on Chapter 93 in the fashion in which it was applied is without merit. Plaintiff's entire attack of the ordinance not allowing for notice to the owner of the personalty on the property in this case is simply off base, as the summary judgment evidence shows that not only did the owner of the property, the Railroad, get notice of the Chapter 93 violation, but the City repeatedly attempted to notify Plaintiff of the violations, even though such is not required by the ordinance. See City Defendants Motion for Summary Judgment, Exhibits A (#10001-10007); A4 (#10034-49)and (#10050-55). Of great importance, is the fact that Plaintiff himself, or someone purporting to be Plaintiff, signed for a Chapter 93 ordinance violation letter before any City cleanup under that ordinance. See City Defendants Motion for Summary Judgment, Exhibit A (#10053-10055). Thus Plaintiff cannot claim a due process violation regarding this ordinance, as applied, regarding notice, since the Plaintiff received notice of the violation, and had ample opportunity to correct the problem.

**Conclusion & Prayer**

Therefore, based on any one or more of the foregoing reasons, CITY DEFENDANTS request and pray that after due and

proper consideration that the Court make a judicial determination that the CITY OF HARLINGEN Ordinance Chapter 93 is constitutional on its face and as applied with respect to Plaintiff in this case.

Finally, CITY DEFENDANTS request and pray for any such other additional and further relief, at law or in equity, to which they are justly entitled.

Signed on the 16th day of July, 2002.

Respectfully submitted,

**DENTON, NAVARRO & BERNAL**
A Professional Corporation
Bank of America Building
222 East Van Buren, Suite 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Fax)

By: _____
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. ID No. 5953
ROBERT DRINKARD
State Bar No. 24007128
Fed. Dist. No. 29288

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document has been sent by regular U.S. Mail, unless otherwise indicated, to the persons listed below on the 17th day of July, 2002.

Hugo Xavier De Los Santos          **By CMRRR# 7002 1000 0004 8591 2090**
LAW OFFICE OF HUGO XAVIER DE LOS SANTOS
6800 Park Ten Blvd. Ste. 123-N
San Antonio, Texas 78213
COUNSEL FOR PLAINTIFF

Mr. Michael R. Ezell
LAW OFFICE OF MICHAEL R. EZELL
312 E. Van Buren
P.O. Box 2878
Harlingen, Texas 78551
COUNSEL FOR DEFENDANT LA FERIA WRECKER SERVICE

Mr. Curtis Bonner
BONNER & BONNER
103 S. Third
P.O. Box 288
Harlingen, Texas 78551-0288
COUNSEL FOR DEFENDANT T&T TOWING SERVICE

_____
RICARDO J. NAVARRO
ROBERT DRINKARD

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| ET.AL. | § | |
|     Defendants | § | |

CITY DEFENDANTS' RESPONSE
TO PLAINTIFF'S FIRST AMENDED
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF

# EXHIBIT A

# CHAPTER 93: NUISANCES

Section

93.01   Stagnant water prohibited
93.02   Accumulation of carrion, filth, and the like prohibited
93.03   Excessive growth or accumulation of weeds and rubbish prohibited; wildlife habitat area exempted
93.04   Abatement required; notice
93.05   Service of notice
93.06   Correction or removal of conditions by city
93.07   Filing of statement of expenses incurred
93.08   Collection of expenses; lien

93.99   Penalty

## § 93.01 STAGNANT WATER PROHIBITED.

It shall be unlawful for the owner of any lot or other real property in the city to allow or permit holes or places where water may accumulate and become stagnant to be or remain on such lot or premises or to allow or permit the accumulation of stagnant water thereon, or to permit the same to remain thereon.
('73 Code, § 18-69) (Ord. 60-22, passed, 8-3-60; Am. Ord. 60-34, passed 12-21-60) Penalty, see § 93.99

## § 93.02 ACCUMULATION OF CARRION, FILTH, AND THE LIKE PROHIBITED.

It shall be unlawful for any person who shall own or occupy any house, buildings, establishment, lot or yard, or other real property in the city to permit or allow any carrion, filth, or other impure or unwholesome matter to accumulate or remain thereon.
('73 Code, § 18-70) (Ord. 60-22, passed 8-3-60; Am. Ord. 60-34, passed 12-21-60) Penalty, see § 93.99

## § 93.03 EXCESSIVE GROWTH OR ACCUMULATION OF WEEDS AND RUBBISH PROHIBITED; WILDLIFE HABITAT AREA EXEMPTED.

(A) *Generally.* It shall be unlawful for any person, firm, or corporation who shall own or occupy any lot or other real property within the city to allow weeds, rubbish, brush, or other unsightly, objectionable, or insanitary matter to accumulate or grow on such lot or property. Any person owning a parcel of property of one acre or more and whose property abuts a lot on which is maintained a single- or multi-family residence adjacent to which there is no dedicated street or alley can remedy or remove the condition by mowing of 150 feet in depth along that portion of the parcel that fronts upon the residential property line.

(B) *Wildlife habitat area; exemption.* In addition, any person owning a parcel of one acre or more can request in writing to the City Commission that the parcel be designated a wildlife habitat area and thus will be exempt from the requirements of this section regarding the removal of weeds and brush. The criteria and requirements are as follows:

(1) *Definitions.* For the purposes of this division, the following terms are hereby defined:

(a) *MANAGEMENT PLAN.* A detailed plan describing what steps the property owner will take to maintain the wildlife habitat area.

(b) *QUALIFIED WILDLIFE OR PLANT EXPERT.* A person recognized by both the private parcel owner and the city as an expert on local wildlife or plant life.

(c) *WILDLIFE HABITAT AREA.* A parcel so designated by a majority vote of the City Commission.

(d) *WILDLIFE HABITAT AREA SIGN.* An official on-site sign that will be used to designate an approved wildlife habitat area. The design and wording of this official sign will be subject to a majority vote of the City Commission.

(2) *Designation as a wildlife habitat area; criteria.*

(a) The parcel must be a minimum of one acre in size.

(b) The parcel must be clear of rubbish, junk, or litter.

(c) Property taxes on the parcel must be current.

(3) *Procedures.*

(a) The applicant must submit a written request to the City Secretary's office. This request must include a written statement from a qualified wildlife or plant expert detailing the reasons why the parcel should be designated as a wildlife habitat area and a detailed management plan addressing the maintenance of the habitat area.

(b) The City Secretary shall schedule a City Commission hearing on the request and notify all property owners within 200 feet of the parcel. The qualified wildlife or plant expert shall represent the applicant at this hearing. The City Commission may designate the parcel as a wildlife habitat area by a majority vote.

(c) If the parcel is so designated, the City Manager shall cause to be erected wildlife habitat area signs on the parcel. A sign must face each public street. All costs incurred during the construction and installation of the signage will be paid by the parcel owner.

(d) Once designated as a wildlife habitat area, the Health Department shall periodically inspect the property to ensure compliance with the approved maintenance plan. If noncompliance is found, the wildlife habitat designation can be removed by a majority vote of the City Commission, and the owner of the parcel shall thereafter comply with the requirements of this section by removing weeds and brush thereon. Property owners may make a written request to the City Commission to remove the wildlife habitat area designation, and the removal of such designation shall be granted by the Elective Commission.

(e) The owner of any wildlife habitat area must maintain the area clear of all rubbish, junk, and litter.
('73 Code, § 18-71) (Ord. 60-34, passed 12-21-60; Am. Ord. 86-82, passed 11-5-86; Am. Ord. 90-45, passed 5-2-90; Am. Ord. 91-50, passed 10-15-91) Penalty, see § 93.99


## § 93.04 ABATEMENT REQUIRED; NOTICE.

Whenever any condition described in this chapter is found to exist on any premises or real property within the city, the owner of such premises or real property shall be notified by the city, in writing, to correct, remedy, or remove the conditions within ten days after such notice and it shall be unlawful for any person to fail to comply with such notice.
('73 Code, § 18-72) (Ord. 60-22, passed 8-3-60; Am. Ord. 60-34, passed 12-21-60) Penalty, see § 93.99


## § 93.05 SERVICE OF NOTICE.

The notice provided for in this section shall be served personally on the owner to whom it is directed or shall be given by letter addressed to such owner at his last known post office address. In the event personal service cannot be made and the owner's address is unknown, such notice shall be given by publication at least two times within ten consecutive days in a newspaper of general circulation published within the city.
('73 Code, § 18-73) (Ord. 60-22, passed 8-3-60; Am. Ord. 60-34, passed 12-21-60)

### § 93.06 CORRECTION OR REMOVAL OF CONDITIONS BY CITY.

In the event the owner of any lot, premises, or real property upon which a condition described in this chapter exists fails to correct, remedy, or remove such condition within ten days after notice to do so is given in accord with this chapter, the city may do such work or make such improvements as are necessary to correct, remedy, or remove such conditions, or cause the same to be done, and pay therefor and charge the expenses incurred thereby to the owner of such lot. Such expenses shall be assessed against the lot or real estate upon which the work was done or the improvements made. The doing of such work by the city shall not relieve such person from prosecution for failure to comply with such notice in violation of § 93.04.
('73 Code, § 18-74) (Ord. 60-22, passed 8-3-60; Am. Ord. 60-34, passed 12-21-60)

### § 93.07 FILING OF STATEMENT OF EXPENSES INCURRED.

Whenever any work is done or improvements are made by the city under the provisions of § 93.06, the City Manager or City Health Officer, on behalf of the city, shall file a statement of the expenses incurred thereby with the County Clerk. Such statement shall give the amount of such expenses and the date or dates on which the work was done or the improvements were made.
('73 Code, § 18-75) (Ord. 60-22, passed 8-3-60)

### § 93.08 COLLECTION OF EXPENSES; LIEN.

After the statement provided for in § 93.07 is filed, the city shall have a privileged lien on the lot or real estate upon which the work was done or improvement made, to secure the expenses thereof. Such lien shall be second only to tax liens and liens for street improvements, and in accord with TEX. HEALTH & SAFETY CODE §§ 342.001 through 342.007. For any such expenditures and interest, suit may be instituted and recovery and foreclosure of the lien may be had in the name of the city and the statement of expenses made in accord with § 93.07, or a certified copy thereof, shall be prima facie proof of the amount expended for such work or improvements.
('73 Code, § 18-76) (Ord. 60-22, passed 8-3-60)

### § 93.99 PENALTY.

Any person who shall violate any of the provisions of this chapter shall be guilty of an offense and upon conviction shall be fined as provided in § 10.99 of this code and each and every day's violation shall constitute a separate and distinct offense, in case the owner or occupant of any lot, lots, or premises under the provisions of this chapter shall be a corporation, and shall violate any provisions of this chapter, the president, vice-president, secretary, treasurer of such corporation, or any manager, agent, or employee of such corporation shall be also severally liable for the penalties herein provided.
('73 Code, § 18-77) (Ord. 60-22, passed 8-3-60)