United States District Court
Southern District of Texas
FILED

JUL 2 6 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS, | § | |
| Plaintiff | § | |
| V. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, CAMERON | § | |
| COUNTY, TEXAS, ET AL | § | |
| Defendants | § | |

### PLAINTIFF'S RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT ASSERTION OF QUALIFIED & INDIVIDUAL IMMUNITY AND BRIEF IN SUPPORT THEREOF

==========================================================

MAY IT PLEASE THE COURT:

Plaintiff, John Ocie Roberts, files this his **Plaintiff's Response to City's Motion for Summary Judgment Assertion Of Qualified & Individual Immunity And Brief In Support Thereof** and would show the Court the following without waiving any other defense if a particular issue is inadvertently unaddressed, however, Plaintiff would show the Court the issue areas in which Defendants is totally and completely diverting the Court's attention to incorrect premises:

1.   Defendant's contention:

### NATURE OF THE CASE

This controversy arises out of the CITY OF HARLINGEN'S enforcement of two environmental ordinances, one related to clean up of trash, debris, and rubbish (chap. 93), and another related to clean up of junked vehicles (chap. 94), after a fire devastated the structure on the lot in question.

Plaintiff's response:

   <u>Ab initio</u>, apparently the city is not using the statutory definitions. Section 683.077 of the Texas Transportation Code is the controlling statute:

**§683.077. Inapplicability of Subchapter**

 (a) Procedures adopted under Section 683.074 or 683.9765 may not apply to a vehicle or vehicle part:

  (1) that is completely enclosed in building in a lawful manner and is not visible from the street or other public or private property; or

  (2) that is stored or parked in a lawful manner on private property in connection with the business of a licensed vehicle dealer or junkyard, or that is an antique or special interest vehicle stored by a motor vehicle collector on the collector's property, if the vehicle or part and the outdoor storage area, if any, are:

   (A) maintained in an orderly manner;

   (B) not a health hazard; and

   (C) screened from ordinary public view by appropriate means, including a fence, rapidly growing trees, or shrubbery.

 (b) In this section:

  (1) "Antique vehicle: means a passenger car or truck that is at least 25 years old.

  (2) "Motor vehicle collector" means a person who:

   (A) owns one or more antique or special interest vehicles; and

   (B) acquires, collects, or disposes of an antique or special interest vehicle or part of an antique or special interest vehicle for personal use to restore and preserve an antique or special interest vehicle for historic interest.

  (3) "Special interest vehicle " means a motor vehicle of any age that has not been changed from original manufacturer's specifications and, because of its historic interest, is being preserved by a hobbyist.

  (2) therefore, from the beginning, the city is operating with an erroneous premise. These are antiques and not junk.

  (3) Defendant City's, contention:

Plaintiff, a lessee of the lot on which the fire occurred, and which was cleaned up under the direction of the environmental Health Department of the CITY. Plaintiff contends that the

CITY deprived him of his personal property in violation of his state and federal rights without due process of law.

Perhaps, Plaintiff is the one that is using the wrong definition of "cleaned up". The city came and cleaned out Plaintiff's store in the name of cleaning up debris from the fire. The fire was limited to the building. All the rest was untouched by the fire. And it was not to be distributed to the official's friendly scavengers.

(4) The City's Contention:

STATEMENT OF ISSUES PRESENTED FOR REVIEW

CITY DEFENDANTS present the following issues for review:

"A. Whether Individual Defendants Are Entitled to Qualified Immunity on all Plaintiff's Federal Claims.

B. Whether the Individual Defendants Are Entitled to Official Immunity from All State Law Based Claims."

(5) Plaintiff has requested the inventories of picked up vehicles and he has not received any list. Therefore, these items are to left unaccounted. The issue before this Court, merely because an individual is a city official, may that individual not be accountable for this actions merely because he or she allegedly has immunity.

(6) City's contention:

"C. Whether a Cause of Action for Civil Conspiracy Has Been Met."

(7) The wrecker service Defendants all acted identically, i.e. none notified Plaintiff as required by law; none demolished any vehicle as were the instructions from the city; none gave a report to no one; all hence hid the vehicles, only by chance has Plaintiff been able to located a few, and those located are the ones now the city and the wrecker service Defendant all of sudden even have photos. The conspiracy may still be seen up to today.

(8) the City's contention:

"D. Whether Defendant City of Harlingen is Entitled to Immunity from All State Law

Based Claims."

(9) Instead of acting under good faith, why not require the official to follow the law Texas Transportation Code § 683.075 Notice

(a) The procedures for the abatement and removal of a public nuisance under this subchapter must provide not less than 10 days notice of the nature of the nuisance. The notice must be personally delivered or sent by certified mail with a five-day return requested to:

(1) the last known registered owner of the nuisance;

(2) each lienholder of record of the nuisance; and (emphasis ours)

(3) the owner or occupant of;

(A) the property on which the nuisance is located; or

(B) if the nuisance is located on a public right-of-way, the property adjacent to the right-of-way.

(b) The notice must state that:

(1) the nuisance must be abated and removed not later than the 10th day after the date on which the notice was personally delivered or mailed; and

(2) any request for a hearing must be made before that 10-day period expires.

(c) If the post office address of the last known registered owner of the nuisance is unknown, notice may be placed on the nuisance or, if the owner is located, personally delivered. (emphasis ours)

(d) If notice if returned undelivered action to abate the nuisance shall be continued to a date not earlier than the 11th day after the date of the return.

(10) The city asks:

"E.    Whether Defendant City is Entitled to Judgment as a Matter of Law."

(11) Plaintiff hereby requests that the court answer in the negative.

(12) In the matter of a civil conspiracy, the city contends:

"Plaintiff cannot established a claim for civil conspiracy against DEFENDANTS as none of the DEFENDANTS committed an unlawful, overt act with respect to Plaintiff. Further, since each individual defendant is an agent of the CITY, no conspiracy is legally possible."

(13) Possible the City using the argument that a corporation may not conspire within itself in that it is one single unit. However, the moment no inventory may be found, then someone is instructing all of the individuals involved not to truth fully reveal nor account for the property taken. The Overt Act is not only the taking but the silence.

Texas Transportation Code § 683.074

(2) require a public hearing before removal of the public nuisance; and

(3) require that notice identifying the vehicle or part of the vehicle be given to the department not later than the fifth day after the date of removal.

Where are these records? No one knows probably because they do not exist.

(14) then the city labels a paragraph: "Uncontroverted Facts" Plaintiff has never stated he kept junk of any kind.

(15) The city contends:

"After such time, pursuant to City Ordinance §94.41, DEFENDANTS determined that numerous vehicles on the property in question wee junk vehicles and nuisance pursuant to the ordinance. See Exhibit A (#10003); A-5 (#10056-62)"

(16) Plaintiff shows the Court that the city used the wrong definitions for the vehicles and furthermore had no hearings.

(17) City contends:

"DEFENDANTS, acting pursuant to City Ordinance §94.43, attempted to identify the last known registered owner of the junked vehicles on the property, but were unable, after good faith efforts to do so, for most such vehicles."

The city never tried to identify the owners. Plaintiff was the owner and he was never informed.

(18) The City contends:

"At that point, the CITY DEFENDANTS, on February 2, 2000, pursuant to City Ordinance §94.43, notified the owner of the property on which the vehicles were kept, of the determination that all the identified vehicles constituted junk motor vehicles, instructing such owner what needed to be done and the results for failure to comply. The notice also informed

the owner of the right to appeal the determination within 10 days.

"In July, over five months after notifying the owner of the property of the junk vehicles, nobody had requested a timely appeal regarding the junk motor vehicles, nor removed the vehicles, the CITY, acting under the direction of DEFENDANT ordered the removal of the junk vehicles pursuant to City Ordinance Chapter 94. Starting on July 17, and continuing for several weeks, the junk motor vehicles were removed from the property and taken to various salvage yards."

(19) Plaintiff contends that none of this is truthful, with the exception of the last item, taking the vehicles to salvage yards. A junk yard is one which crushes and sells the metal by the pound. A salvage yard sells parts, reconstructions cars and then sells them. Therefore, the city has no accounting int his action in violation of Texas Transportation Code 683.074

§683.074. Authority to Abate Nuisance; Procedures

(a) A municipality or county may adopt procedures that conform to this subchapter for the abatement and removal from private or public property or a public right-of-way of a junked vehicle or part of a junked vehicle as a public nuisance.

(b) The procedures must:

(1) prohibit a vehicle from being reconstructed or made operable after removal;

(20) The city contends:

"This was in addition to numerous notices the City had sent to Plaintiff regarding such violations dating back to 1996."

This is simply an untrue statement. Plaintiff received no one notice.

(21) The ordinance which is being challenged in its constitutionality is not even in

with the spirit of present day concept of notice.

Texas Transportation Code

§683.0765. Alternative Procedure for Administrative Hearing

A municipality by ordinance may provide for an administrative adjudication process under which an administrative penalty may be imposed for the enforcement of an ordinance adopted under this subchapter. If a municipality provides for an administrative adjudication process

under this section, the municipality shall use the procedure described by Section 54.044, Local Government Code.

§54.035. Notice

(a) Notice of al proceedings before the commission panels must be given:

(1) by personal delivery or by certified mail, return receipt requested, to the record owners of the affected property, and each holder of a recorded lien against the affected property, as shown by the records in the office of the county clerk of the count in which the affected property is located if the address of the lienholder can be ascertained from the deed of trust establishing the lien and/or other applicable instruments on file in the office of the county clerk; <u>and</u> (Emphasis ours)

(2) to all unknown owners, by posting a copy of the notice on the front door of each improvement situated on the affected property or as close to the front door as practicable.

(b) The notice must be posted and either personally delivered or mailed on or before the l0th day before the date of the hearing before the commission panel and must state the date, time, an place of the hearing. In addition, the notice must be published in a newspaper of general circulation in the municipality on one occasion on or before the 10th day before the date fixed for the hearing.

(22) Finally, the City contends:

"These violations were not corrected, and in October Defendant Serna ordered the removal of all junk matter from the premises.

Plaintiff filed his lawsuit in October 2000, around the time of that the final clean up was concluded."

Again, Plaintiff disagrees with the definition of "junk" and this alleged clean was in full force however, it was not finished until December of 2000.

This lawsuit was brought in an attempt to halt the abuse of powers. So much was the abuse, that even after Plaintiff would load his trailers in preparation for relocating, the city would hitch the trailers and take them against Plaintiff's begs for mercy.

However, now the City is attempting to become immune because it is a government.

Where is the inventory. Plaintiff's inventory was burned however, the City should have had made one.

## ARGUMENT AND AUTHORITIES

The foundational laws of this case is rooted in the constitutional grounds of both the Constitution of the State of Texas, and the Constitution of the United States of America. One has the right to sue pursuant Article 1, Section 17 of the Texas Constitution if there has been a taking of a bested right.
(Houston v Northwood Mun. Utility Dist. 73 S.W. 3d 304 (Tex. App. -Houston [1st Dist] 2001 reh overruled).

Also, Amendment XIV of the Constitution of the United States of America states that "...nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." These violations of these rights are actionable.

The real problem the City is facing is in not having a transparent accountability in this case. When dealing with public monies, certain rules operate.

The Supreme Court in Texas Mun. League v. Workers' Comp. Com'n 74 S.W. 3d 377 (Tex. 2002) stated: " Moreover, we have determined that section 52(a) does not prohibit payments to individuals, corporation, or associations so long as the statute requiring such payments: (1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return. See Edgewood IV, 917 S.W. 2d at 740; Bullock v. Calvert, 480 S.W. 2d 367, 379 (Tex. 1972) (citing Davis v. City of Lubbock 160 Tex. 38, 326 S.W. 2d 699 (1959)); Brazos riber Auth v. Carr, 405 S.W 2d 689, 694 (Tex. 1966); Byrd, 6 S.W. 3d at 740. A three part test determines if a statute accomplished as public purpose consistent with section 52(a). Specifically, the Legislature must: (1) ensue that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit. See Atkinson v. City of Dallas, 353 S.W. 2d 275, 279 (Tex. Civ. App.-Dallas 1961, writ ref'd n.r.e.); Gillhan v. City

of Dallas, 207 S.W. 2d 978, 983 (Tex. Civ. App- Dallas 1948, writ ref'd n.r. e.).

The city has an accountability problem. Who received what; how much did each person make; what did each wrecker receive, etc.

No amount of affirmative defenses can hide the problem. Plaintiff's property was taken, nobody knows what became of the inventory or, who received the money. The city contends that is was Plaintiff's fault for not allowing the wrecker services to go into his private home and take some more.

The City never noticed the Plaintiff. They just took. The state district judges plainly refused to even grant Plaintiff a hearing. There is nothing Plaintiff could have done to prevent the city's actions. Even while Plaintiff would be filling his trailer in order to try to minimize his losses, the city would remove Plaintiff's items complete with his trailers. Therefore, Plaintiff can not agree with Defendants City that "...the competent summary judgment evidence establishes the elements of official immunity as to each of Plaintiff's state claims against each individual City Defendant, and Plaintiff can produce no evidence to overcome such defense, with regards to these claims. Thus Plaintiff's state law claims against the individual Defendants should fail as a matter of law.

Even under a very strict standard as espoused in CITY OF SAN AUGUSTINE v. PARRISH 10 S.W. 3d 734 (Tex. App.-Tyler 1999) the facts must first be determined. The standard in said case is the following:

> "To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonable prudent officer could have decided to take a different action; the plaintiff must produce evidence that no reasonable person in the officer's position could have thought that the facts were such that they justified the officer's acts."

As Plaintiff was in his yard filled with inventory, approximately on the 20th of July of 2000, he spoke to the chief of police of Harlingen, Cameron County, Texas. The chief informed him that he had not finished picking up all things but he would be back the next morning at 7:00 a.m. This response was to Plaintiff's question which, being paraphrased: May

a city take all of his property without notice, just ignore all the fences, ignore the locked gates, the no trespassing signs, the fence posts painted purple, etc. The answer was, yes, and they would be back to finish off and if Plaintiff interfered, he would be charged with a crime.

Would have a prudent officer not verified from whence his authority was emanating? After all, the fences were made of wood which prevented the public from viewing the inventory from the street.

There were many vehicles, some dating back to the 1920's, yet, the statute defining these vehicles was ignored and allegedly the vehicles were demolished.

Would a reasonable prudent officer make sure he was following the statutes of the State of Texas or he merely guide himself with the invoked ordinance of the City of Harlingen?

There were items of great weight. There was a bull dozer blade weighing approximately four (4) tons, yet this item was considered debris.

One can go down the inventory as to what was outside and not burned and ask the same question to each item. Is this trash, debris, weeds, abandoned vehicles, junk?

All the items that were picked up should have been sold (Chapter 94.07) These items have not been sold. Where are they. Would a reasonable prudent officer not have followed the mandates of these ordinance, which the City invoked?

As to the civil conspiracy: All of the receipts proffered by the City, where the wrecker services allegedly were supposed to fill out, only some have the year of the cars. How odd! Perhaps, (a fact question) the police did not have to follow the law on antiques cars if the year was not mentioned. Sounds like a conspiracy or merely all those involved, some of them are allegedly experts with the remodeling of vehicles, and apparently did not know what a 1930 car looked like. Only those models with less than 25 years of age did have the year of the vehicle taken in these reports. (See affidavits attached to city's motion for summary judgment assertion of qualified immunity, such are incorporated by reference as if fully copied herein.)

Plaintiff recalls Matt Brown who went by Plaintiff's place of business late one evening and stated to Plaintiff, "which ones are you taking," the City had told him to go and pick out what he wanted. If it was debris, waste and junk, the City would not have offered it.

If these is trash together with good items, would a reasonable prudent officer take the good items and throw them away with the trash.

Wouldn't a reasonable prudent officer have arrested Plaintiff instead of "throwing" away all of the inventory.

It sound like the old adage: "Do not throw the baby out with the dishwater?"

## CONCLUSION

Plaintiff was never given notice of the removal of any item until it began happening. He has never lived or had an address in San Antonio or Houston.

Defendants allegedly sent a letter to Plaintiff however, Plaintiff had not live close to that area for four (4) yeas before the letter was allegedly sent. It is Plaintiff's contention that any other officer who would be faced with same or similar circumstances should have either arrested Plaintiff or would have had a judge issue a summons but not take and give all of Plaintiff's inventory away.

Plaintiff remembers quite clearly the chief, Jim Schnoener, smoking his long cigar and threatening with a charge of interfering if Plaintiff would take any action.

There are many facts that must be established, i.e. whether the vehicles were antiques or not, etc., before the issue of "good faith" can be resolved.

The United States Supreme Court in <u>ANERSON v. CREIGHTON</u>, 483 U. S. 635 (1987) stated the following:

> "Thus, on remand, it should be first be determined whether the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful... If they are not, and if the actions Anderson claims he took are different from those the Creightons alleged (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of Anderson's qualified immunity."

Therefore, this matter of qualified immunity is not ripe for summary judgment.

Neither can Plaintiff agree with Defendant City that the federal claims should be dismissed summarily.

Wherefore, Plaintiff prays that this motion be denied.

Plaintiff prays for general relief.

Respectfully submitted,

By *John Ocie Roberts*

*Hugo Xavier De Los Santos*
Hugo Xavier De Los Santos
Attorney At Law
State Bar No. 05653300
U. S. Southern District Id. #11259
6800 Park Ten Blvd. Suite 123-N
San Antonio, Texas 78213
(210) 736-4227
(210) 737-1556 Fax
Attorney for John Ocie Roberts, Plaintiff

*John Ocie Roberts* INDIVIDUAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS, | § | |
| Plaintiff | § | |
| II. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, CAMERON | § | |
| COUNTY, TEXAS, ET AL | § | |

## ORDER

On this the_____day of_____, 2002, Plaintiff's, John Ocie Roberts, **Motion for Summary Judgment Assertion Of Qualified & Individual Immunity And Brief In Support Thereof** came to be heard.

Having examined the pleadings and having examined the proffered evidence, this Court is of the opinion that this motion should be granted.

THEREFORE, IT IS ORDERED that Defendant's --------motion for summary judgment is hereby denied.

SIGNED for entry on this the_____day of_____, 2002.

_____
Judge Presiding

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN OCIE ROBERTS, | § | |
|     Plaintiff | § | |
| I. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, CAMERON | § | |
| COUNTY, TEXAS, ET AL | § | |

STATE OF TEXAS    }

COUNTY OF WILLACY  }

### AFFIDAVIT

BEFORE ME, personally appeared John Ocie Roberts and stated under oath that the following is true and correct and from his own personal knowledge.

My name is John Ocie Roberts. I am competent to testify. I am over the age of eighteen (18) years and have never been convicted of any crime.

I am the Plaintiff in this case. I did not have any junk in my premises. I never received any notices that the city was planning to clean my place, the Bargain Barn.

I did not violate any ordinance. I have never had an address in Houston or in San Antonio, Texas.

All of my cars had wheels and tires.

Even while I was removing my things, I would load my trailers and the city would take my trailers and all. They took down my fences. They took everything.

_____
John Ocie Roberts

SWORN AND SUBSCRIBED TO BEFORE ME, the undersigned notary, on this the 26th day of July, 2002, which witness my hand and seal.

_____
Notary Public-State of Texas

Alma R. Barroso
Printed Name of Notary
My commission expires: 4-23-06

ALMA R BARROSO
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-23-2006