IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOHN OCIE ROBERTS | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CAUSE NO. B-01-034 |
| | § | |
| CITY OF HARLINGEN, TEXAS, | § | |
| ET. AL. | § | |
| Defendants | § | |

**CITY DEFENDANTS' REPLY
TO PLAINTIFF'S RESPONSE TO CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT &
ASSERTION OF QUALIFIED AND INDIVIDUAL IMMUNITY
AND BRIEF IN SUPPORT THEREOF**

May it Please the Court:

COMES NOW CITY DEFENDANTS and file this their Reply to Plaintiff's Response to CITY DEFENDANTS' Motion for Summary Judgment and Assertion of Qualified and Individual Immunity and would show the Court as follows:

**I.
NATURE OF THE CASE**

The pending controversy involves the CITY OF HARLINGEN'S (hereafter "CITY") efforts to enforce environmental ordinances, related to the clean up of trash, debris, rubbish, and junked vehicles, after a fire devastated the structure on the lot in question. Plaintiff, the lessee of the lot on which the fire occurred, and which was cleaned up under the direction of the Environmental Health Department of the CITY, contends that the CITY deprived him of his personal property in violation of his state and federal rights without due process of law, as a result of the cleanup.

II.
SUMMARY OF CITY'S REPLY ARGUMENT

A.  Plaintiff has produced no evidence to overcome the CITY DEFENDANTS' assertion of qualified and official immunity with respect to the removal of the junk vehicles and other junk matter from the premises.

B.  Article III, Section 52(a) of the Texas Constitution Not Applicable

III.
LEGAL ARGUMENT & ANALYSIS

A.  Individual Defendants Entitled to Qualified and Official Immunity From All Claims

Plaintiff attempts to attack the Defendants entitlement to immunity from all claims, and while much of Plaintiff's Response is basically indecipherable, strangely worded and difficult to follow, CITY DEFENDANTS would respond to the issues seemingly raised. In the response and all motions prior to it, Plaintiff has produced no evidence to overcome the CITY DEFENDANTS' entitlement to qualified and official immunity, as argued in CITY DEFENDANTS' Motion for Summary Judgment.

1.  No Violative Material or Junk Vehicles Removed from Premises Were Sold or Required to Be Sold.

Plaintiff questions whether a reasonably prudent officer would have not followed the mandates of Harlingen City Ordinance §94.07 and sold the items removed from the premises. First, only the junk vehicles, no other materials, were removed

pursuant to Chapter 94 of the City Ordinances. Secondly, the vehicles removed from such property were removed as junk vehicles, not as abandoned property requiring sale. Chapter 94 of the Harlingen City Ordinances does not require the sale of junk motor vehicles. See CITY DEFENDANTS' Motion for Summary Judgment, Exhibit A-2. The junk vehicle ordinance, §94.42, specifically states that "junked vehicles or parts thereof may be disposed of by the city or the removal thereof to a scrap yard, demolisher, or any suitable site operated by the city for processing scrap or salvage". See CITY DEFENDANTS' Motion for Summary Judgment, Exhibit A-2. The junk vehicles removed from the premises were not sold, nor were they required to be sold by law.

With respect to all other junk material removed from the premises, as indicated in CITY DEFENDANTS' Motion for Summary Judgment, such was removed pursuant to Chapter 93 of the Harlingen Code of Ordinances. Nowhere in Chapter 93 does it required the sale of any material removed from property pursuant to such Ordinance. See CITY DEFENDANTS' Motion for Summary Judgment, Exhibit A-1. The CITY did not sell any of the rubbish, junk or garbage material removed pursuant to Chapter 93 of the Harlingen City Ordinance, nor was it required to.

2.  **Vehicles Removed Were Junk Vehicles per Law and Defendants Entitled to Immunity for Following Ordinance**

Plaintiff claims that the statute defining junk vehicles was ignored. However, the definition of junk vehicles included in Chapter 94 of the Harlingen Code of Ordinances, particularly §94.36, is identical to the definition contained in the Texas Transportation Code §§621.001 et seq. All vehicles removed from the premises were not antiques, but junk vehicles pursuant to the definitions contained in the Texas Transportation Code and Chapter 94 of the Harlingen Code of Ordinances. See CITY DEFENDANTS' Motion for Summary Judgment p. 9, with attached Exhibits A, A-2 (#10017) and A-7 (#10066-73); and Exhibit B at pp. 38-85, 91 line 15-20 (#10117-129; 10130).

Plaintiff raises the fact that the vehicles were antiques. The fact that any vehicles are antiques in terms of their age does not apply or make any difference to a determination of the vehicle as a junk vehicle if the "antique" vehicle is kept in a certain condition, namely that it is not maintained in an orderly manner, is a health hazard and is not screened from public view by appropriate means. Texas Transportation Code §683.077. None of the vehicles removed from the premises met the exception, and thus all were junk vehicles, regardless of

their age. See CITY DEFENDANTS' Motion for Summary Judgment p. 9, with attached Exhibits A, A-2 (#10017) and A-7 (#10066-73).

Furthermore, and perhaps most importantly, is the fact that the Individual Defendants would not have been required to consult the underlying state law statutes before acting as they did in order to be entitled to qualified and official immunity. Each of the individual Defendants, in consulting a facially valid and lawful CITY ordinance presently in effect, and in following the mandates for enforcing such ordinance, clearly acted in a fashion with respect to their actions regarding the premises, as to meet all of the elements of qualified and official immunity set out in CITY DEFENDANTS' Motion for Summary Judgment. The affirmative defenses of qualified and individual immunity do not require officials to thoroughly research, in addition to facially valid Ordinances, any and all underlying state statutes authorizing such ordinances, before acting.

In this case, each of the individual Defendants acted at all times guided by lawful, fully enforceable City Ordinances. Such officials cannot be expected to weigh and measure the potential constitutionality of each city ordinance before acting. A reasonable official given the same circumstances would certainly not have researched the underlying state statutes giving rise to

the Ordinance presently guiding the junk vehicles and Chapter 93 violations before having such materials removed.

### 3. Violation of City Ordinances 93 and 94 Not a Jailable Offense, Nor is "Summons" Required

Plaintiff argues that a reasonably prudent officer in similar circumstances would have arrested Plaintiff or had a judge issue a summons rather than have the junk items removed. Plaintiff's argument is in no fashion supported by law. First, violation of Harlingen Code of Ordinances Chapters 93 and 94 is not a criminal, or jailable offense. Secondly, neither of these chapters requires a "summons" from a judge, but only requires the appropriate notice provisions set out clearly in the ordinance. See CITY DEFENDANTS' Motion for Summary Judgment, Exhibits A-1 & A-2 (#10008-22). Therefore, as no law requires an officer to jail a violator of these ordinances or to get a "summons", then no reasonably prudent officer would have done either of these prior to the removal of the junk items.

### 4. All Items Removed Violated Chapter 93 or 94

Plaintiff asks whether a reasonably prudent officer would take away the "good" items and throw them away with the trash. Every item taken from the premises was causing the premises to be in violation of either Chapter 93 or Chapter 94 of the Harlingen Code of Ordinances. See CITY DEFENDANTS' Motion for

Summary Judgment, with attached exhibits. If Plaintiff's definition of "good" items is those items that were not in violation of City Ordinance, then there were no "good" items that were removed from the premises.

### B. Article III, Section 52(a) of the Texas Constitution Not Applicable

Plaintiff makes light of the fact that when dealing with public monies, certain rules apply, particularly Article III, Section 52(a) of the Texas Constitution. This article of the Texas Constitution, along with the cited caselaw by Plaintiff, have absolutely no relevance to this issue at all. The article provides that "[T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever..."

The CITY, nor the individual Defendants, lent any credit or granted any public money or things of value to any individual, association or corporation. The Supreme Court has held that Section 52(a)'s prohibiting the Legislature from authorizing a political subdivision "to grant public money" means that the Legislature cannot require *gratuitous* payments to individuals, associations, or corporations. *Edgewood Indep. School Dist. v.*

*Meno*, 917 S.W.2d 717, 740 Tex.1995) (Edgewood IV); *Bexar County Hosp. Dist. v. Crosby*, 160 Tex. 116, 327 S.W.2d 445, 447 (1959). A political subdivision's paying public money is not "gratuitous" if the political subdivision receives return consideration. *Key v. Commissioners Court of Marian County*, 727 S.W.2d 667, 668 (Tex.App.-Texarkana 1987, no writ.)

The CITY paid the respective wrecker services to haul off all the junk vehicles and Chapter 93 violative material. Such is significant consideration for the payment and absolutely no gratuitous payments were made. This Article of the Texas Constitution has no relevance whatsoever to Plaintiff's cause of action.

Furthermore, is has been determined that Section 52(a) does not prohibit payments to individuals, corporations, or associations so long as the statute requiring such payments: (1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return. See *Edgewood IV*, 917 S.W.2d at 740. A three-part test determines if a statute accomplishes a public purpose consistent with Section 52(a). Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to

ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit. *Atkinson V. City of Dallas*, 353 S.W.2d 275, 279 (Tex.Civ.App.-Dallass 1961, *writ ref'd n.r.e.*)

The statutes relating to nuisances and junk vehicles clearly meet this test and any payments associated with the enforcement of these statutes and the ordinances based on them would not be prohibited. Again, this Article of the Texas Constitution has no relevance whatsoever to Plaintiff's cause of action.

### CONCLUSION & PRAYER

Therefore, based on any one or more of the foregoing reasons, along with CITY DEFENDANTS Motion for Summary Judgment, CITY DEFENDANTS request and pray that this Court find there is no genuine issue of material fact, that each element of CITY DEFENDANTS' affirmative defenses has been met, that Plaintiff has produced no evidence to overcome such defenses nor to establish his claims, and thus grant summary judgment in favor of the CITY DEFENDANTS as to all of Plaintiff's claims.

CITY DEFENDANTS also pray for their costs and attorney fees and for such other and further relief to which they may show themselves justly entitled.

Signed on the 13th day of September, 2002.

                                      Respectfully submitted,

                                      **DENTON, NAVARRO & BERNAL**
                                      A Professional Corporation
                                      Bank of America Building
                                      222 East Van Buren, Suite 405
                                      Harlingen, Texas 78550
                                      956/421-4904
                                      956/421-3621 (Fax)

By: _____
                                      RICARDO J. NAVARRO
                                      State Bar No. 14829100
                                      So. Dist. ID No. 5953
                                      ROBERT DRINKARD
                                      State Bar No. 24007128
                                      Fed. Dist. No. 29288

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been sent by regular U.S. Mail, unless otherwise indicated, to the persons listed below on the 13th day of September, 2002.

Hugo Xavier De Los Santos     **By CMRRR#: 7002 1000 0004 8591 0812**
LAW OFFICE OF HUGO XAVIER DE LOS SANTOS
6800 Park Ten Blvd. Ste. 123-N
San Antonio, Texas 78213
**COUNSEL FOR PLAINTIFF**


Mr. Michael R. Ezell
LAW OFFICE OF MICHAEL R. EZELL
312 E. Van Buren
P.O. Box 2878
Harlingen, Texas 78551
**COUNSEL FOR DEFENDANT LA FERIA WRECKER SERVICE**

Mr. Curtis Bonner
BONNER & BONNER
103 S. Third
P.O. Box 288
Harlingen, Texas 78551-0288
**COUNSEL FOR DEFENDANT T&T TOWING SERVICE**

_____
RICARDO J. NAVARRO
ROBERT L. DRINKARD