**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

MAR 0 5 2003
3:40 pm
Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOHN OCIE ROBERTS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-01-34 |
| | § | |
| CITY OF HARLINGEN ET AL., | § | |
| | § | |
| Defendants. | § | |

United States District Court
Southern District of Texas
ENTERED

MAR 0 4 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

**ORDER**

BE IT REMEMBERED that on March 5, 2003, the Court considered the following Motions for Summary Judgment and responses and replies thereto: Defendants T & T Towing, La Feria Wrecker Service, and City of Harlingen's Motions for Summary Judgment [Dkt. Nos. 31, 37, 42]; Plaintiff's Partial Motion for Summary Judgment [Dkt Nos. 41, 44, 45]; and all responses and replies thereto [Dkt. Nos. 36, 37, 40, 46, 48, 49, 50, 57]. After a thorough examination of the motions, briefs, evidence submitted by the parties, and the applicable law, the Court finds there is no genuine issue of material fact regarding Plaintiff's claims. Accordingly, Plaintiff's Motion for Summary Judgment [Dkt. Nos. 41, 44, 45] is **DENIED**. Defendants T & T Towing Service, La Feria Wrecker Service, and City Harlingen's Motions for Summary Judgment [Dkt. Nos. 31, 37, 42] are **GRANTED**.[1]

---

[1]In disposing of the City's Motion for Summary Judgment, the Court also disposes of T & T Towing Service and La Feria Wrecking Service's Motions for Summary Judgment. Because these wrecker services acted at the request of the City of Harlingen, and the Court has found the City acted in compliance with its city ordinances, Plaintiff's claims against these wrecker services also fail. Additionally, Plaintiff has not presented evidence, or even alleged facts that would support a claim that the wrecker services engaged in theft and civil conspiracy in the course of carrying out the City's instructions to remove junked vehicles from the property. Similarly, Plaintiff has failed to present claims against any "junkyard defendants."

1

## I. *Factual and Procedural Background*

A substantial portion of Plaintiff's case is rooted in 42 U.S.C. § 1983. An action brought under section 1983 against a state actor in his individual capacity, however, is susceptible to the affirmative defense of qualified immunity. Plaintiff's claims arise out of the City of Harlingen's enforcement of Chapters 93 and 94 of the City of Harlingen's Code of Ordinances. Chapter 93, referred to as the "Nuisance Ordinance," concerns public nuisances and encompasses the cleanup of trash, debris, and rubbish on real property located within the city. Chapter 94, referred to as the "Junked Vehicle Ordinance," concerns abandoned property and the cleanup of junked vehicles. The Plaintiff in this case, Mr. Ocie Roberts, was the owner of a business called the Bargain Barn, which was located in Harlingen, Texas. Roberts leased the lot on which the Bargain Barn was located from the Southern Pacific Railroad. After a fire occurred in January 2000, the building structure was destroyed, and at the direction of the Harlingen Environmental Health Department and the Director of this department, Dan Serna, the City began the process of cleaning up and removing from the property items such as motor vehicles, parts, and appliances.[2] There are three individually named defendants in this case: Dan Serna, the Director of the Harlingen Environmental Health Department, and Ruben Mares and Sam Gutierrez, health inspectors in the Environmental Health Department who assisted in the cleanup of the property under the supervision of Dan Serna. Additionally, Plaintiff has brought claims against several wrecker services and junk yard demolishers.

Pursuant to Section 94.43 of the Code of Ordinances, the City sent notice to the record owner of the property, the Southern Pacific Transportation Company, notifying them that vehicles kept on the property constituted junked vehicles under the ordinance. See Defendant City of Harlingen's Motion for Summary Judgment, Ex. A-4 [Dkt. No. 42]. The City first attempted to identify the owner of the vehicles. See id. at Ex. A, 10001-05. Prior to notifying Southern Pacific, the Department had determined the vehicles in question

---

[2]This case concerns only the cleanup of various items located on the property. The condemnation and removal of the burned out building after the fire was directed and executed by a separate city department.

2

satisfied the definition of "junked vehicles" pursuant to Section 94.36 of the Ordinances. In a letter sent on February 2, 2000, the City notified Southern Pacific by certified mail that the property was not in compliance with the city ordinance. The notification informed Southern Pacific that upon its request within ten (10) days, a hearing would be granted to determine whether the property was in compliance with the ordinance. See id. at Ex. A-6, 10063-65. Without such a request, the City explained it would remove the noncompliant vehicles. Southern Pacific made no such timely request for a hearing. The City removed the vehicles between July and October 2000. See id. at Ex. A, 10001-07.

In addition to the above notification, a final "cleanup notice" was sent to Southern Pacific on July 28, 2000. This notification explained the property was also in violation of Section 93.03 of the City Ordinance. See id. at Ex. A, 10001-07; A-4, 10050-55. The uncontroverted summary judgment evidence demonstrates the City notified both Southern Pacific and Plaintiff by certified mail regarding Plaintiff's failure to comply with Section 93.03 of the Nuisance Ordinance. See id. at Ex. A, 10034-49.[3] This letter was sent to Plaintiff at the address listed in the Commercial Lease for the property at issue. Additionally, Defendants made previously unsuccessful attempts at various addresses, including the address of Plaintiff's business, to notify Plaintiff that excessive weed growth and rubbish on the property violated city ordinances. See Defendants' Motion for Summary Judgment, Ex. A-4, 10034-49 [Dkt. No. 42]. The City presented summary judgment evidence consisting of a certified mail return receipt with the printed name of John Ocie Roberts and a cursive signature of the same name. See id. at Ex. A3 [Dkt. No. 42]. Other than Plaintiff's affidavit in which he states he never received the July 28, 2000, letter and did not sign the return receipt, he has presented no evidence that the City failed to make *attempts* to notify him. See Plaintiff's Motion for Partial Summary Judgment, Ex.

---

[3]Despite Plaintiff's assertions that he did not receive notice from the City of alleged violations, the Court finds the City complied with the notice requirements of the ordinance when it notified Southern Pacific and made an attempt to notify the owner of the vehicles. Whether Mr. Roberts actually received notice that the vehicles would be removed, however, is not material to the outcome of this case because the ordinance at issue did not require that Mr. Roberts be notified before the city could take any action to cleanup the property.

3

B [Dkt. No. 45].[4]  Although the final clean-up notice was dated July 28, 2000, Mr. Serna did not order the final cleanup, pursuant to Section 93.03, until October 2000.  Finally, the uncontroverted evidence demonstrates the City never received a response from Southern Pacific or Plaintiff regarding the alleged violations.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  See Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999).  Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," Celotex Corp. v. Catreet, 477 U.S. 317, 327 (1986), the party "need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (citing Celotex, 477 U.S. at 323).  If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial to survive summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  See also  Little, 37 F.3d at 1071 (citing Celotex, 477 U.S. at 325). "Unsubstantiated assertions" will not adequately cast doubt on material facts at issue.  See

---

[4]The Court is not convinced that Plaintiff's affidavit was sufficient to raise a genuine issue of material fact regarding whether he actually received notice or whether the signature on the certified mail return receipt was authentic.  Nevertheless, the Court's findings concerning the City's compliance with the ordinances would not be disturbed even if Plaintiff had raised an issue of material fact.

4

Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. See Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." Little, 37 F.3d at 1071.

## III. *Plaintiff's Claims Against Defendants in their Individual Capacities*
   *Qualified Immunity*

"Qualified Immunity 'reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties.'" Foster v. City of Lack Jackson, 28 F.3d 425, 428 (5th Cir. 1994) (citing Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.1994)); accord, Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir.1993)). This immunity shields government officials who are performing discretionary duties from liability "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994) (quoting Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir.1986); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See also Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999).

In analyzing a claim for qualified immunity, the Court must first determine whether the alleged facts, taken as true, demonstrate a violation of a constitutional right. See Saucier v. Katz, 121 S.Ct. 2151 (2001). See also Williams v. Bramer, 180 F.3d 699, 702 (5th Cir.), clarified on other grounds, 186 F.3d 633 (5th Cir. 1999). Only if a violation is established will the Court continue to analyze whether the official's acts were "objectively reasonable in light of clearly established law." Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001). See also Kipps, 197 F.3d at 768 (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)). "Objective reasonableness is a matter of law for the courts to decide . . . ." Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999). Therefore, a reasonable person who believed his conduct to comply with clearly established law and

constitutional standards based on information available to him at the time will not be liable even if he was mistaken and committed a constitutional violation.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987); Gutierrez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998).  Should the Court determine, therefore, that a constitutional violation occurred, the Court must then determine whether reasonable inspectors could have believed, pursuant to clearly established law, that removal of Plaintiff's property was lawful based on the information the inspectors possessed at the time.  Furthermore, the question is whether at the time of the cleanup and removal, a prudent person would have believed that Plaintiff was violating chapters 93 and 94 of the City Code of Ordinances.  See Hunter v. Bryant, 502 U.S. 224, 228 (1991).

As the Court discusses below, Plaintiff has not established an underlying constitutional violation because the city ordinances provide adequate notice requirements, and the Defendants sufficiently complied with these notice requirements.  The Court need not, therefore, determine whether the inspectors' actions were objectively reasonable in light of clearly established law.

## IV. *Constitutionality of the City Ordinances*

In order to demonstrate the government has deprived an individual of liberty or property under the Due Process Clause of the Fourteenth Amendment the Plaintiff must first prove the deprivation of a constitutionally protected interest, and then identify an official action that caused the deprivation.  See Johnson v. Houston Indep. Sch. Dist., 930 F. Supp. 276, 285 (S.D. Tex. 1996) (citing Blackburn v. City of Marshall, 42 F.3d 925, 935 (5th Cir. 1995)).  Once Plaintiff identifies a  property interest that has been deprived as a result of an ordinance enacted under a municipality's police power, Plaintiff then carries the burden of proving the invalidity of the ordinance.  See, e.g., Bibb v. Navajo Freight Lines, 359 U.S. 520, 529 (1959); Price v. City of Junction, 711 F.2d 582, 588 (5th Cir. 1983).

Plaintiff has failed to demonstrate the ordinances are facially unconstitutional in light of other similar city ordinances that have been upheld as constitutional.  See, e.g., Bezayiff

6

v. City of St. Louis, 963 S.W.2d 225, 231 (Mo. App. 1998) (holding similar junk vehicle ordinance did not violate procedural due process).   The obstacle, therefore, that Plaintiff faces in this case is that he has not demonstrated that any deprivation he experienced was *not* rationally related to a legitimate government objective in enacting and enforcing both the junked vehicle and nuisance ordinance.  See FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996).

It is commonly known and courts have so held that municipalities have authority under the police power to create policies and enforce ordinances that provide for the public health, safety, and welfare of its inhabitants.  See Village of Euclid v. Ambler Realty, 274 U.S. 365 (1929).  The Supreme Court has held that regulations governing nuisance represent core manifestations of municipal police power.  See Freeman v. City of Dallas, 242 F.3d 642, 653 (5th Cir. 2001).  See also Traylor v. City of Amarillo, Texas, et al., 492 F.2d 1156, 1159 (5th Cir. 1974).  The police power is designed to:

> [J]ustify the State in . . . interposing its authority in behalf of the public, [and] it must appear, first, that the interests of the public . . . require such interference; and, second that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

Goldblatt v. Town of Hempstead, 369 U.S. 590, 594-95 (1962).

Ordinances that require residents to remove inoperable vehicles from their property or enclose them behind a structure or fence is neither arbitrary nor unreasonable.  Indeed, it is an exercise of the City's power to abate nuisances, which entails the power to demolish property without compensation after certain procedural safeguards are observed.  See Freeman, 242 F.3d at 653.  Likewise, ordinances that require the cleanup of rubbish, weeds, or other forms of debris are also not unreasonable or arbitrary.  Section 94.36 of the City Code of Ordinances defines a "junked vehicle" as a vehicle  "(1) [t]hat is inoperative, and, (2) [t]hat does not have lawfully affixed to it either an unexpired license plate or a valid motor vehicle safety inspection certificate, that is wrecked, dismantled, partially dismantled, or discarded or that remains inoperable for a continuous period of more than 45 days."  The city ordinance's definition of a "junked vehicle" is taken directly from the Tex. Transp. Code §§ 621.001 et seq.  Section 93.03(A) clearly prohibits the

7

excessive growth of weeds or the accumulation of rubbish, brush, or other unsightly or insanitary matter. These ordinances are a legitimate and compelling exercise of the City's police power.

Plaintiff's predominant constitutional argument, and indeed the premise of his Motion for Partial Summary Judgment, is that the ordinances in question violate the notice requirements of the Fourteenth Amendment's Due Process Clause.[5] More specifically, Plaintiff argues Section 93.04 of the Nuisance Ordinance allows city officials to arbitrarily choose between giving notice to the owner of the items seized *or* the owner of the real property on which the items to be seized are located even when these owners are not the same. See Plaintiff's Motion for Summary Judgment, at p. 3 [Dkt. No. 45]. The Court disagrees with Plaintiff's categorization of the notice requirements in the above ordinance.

The Fifth Circuit has held that notice and hearing requirements provided by a similar ordinance were constitutionally sufficient. See Price v. City of Junction, Texas, 711 F.2d 582, 590 (5th Cir. 1983). Like the notice requirements at issue in the present case, in Price, the ordinance allowed the government officials to either give notice to the owner of the real property *or* the occupant of the premises upon which the nuisance existed. Id. at 587. Similarly, in Pope v. City of Houston, 559 S.W.2d 905, 908 (Texas App. - Waco 1978), the court held that a nuisance ordinance concerning the cleanup of rubbish and debris was constitutional and did not violate due process when the Plaintiff received a letter

_____

[5]Plaintiff asserts that the "junked vehicle" ordinance subjected his property to taking without just compensation. Plaintiff contends the City seized his property without just compensation. The law is well established on this issue, and the Court need not review in depth the history of the Takings Clause of the Fifth Amendment. More importantly, Plaintiff has not developed his argument regarding this potential constitutional violation and focuses instead on his due process claims. Briefly, the Takings Clause was "designed to bar Government from forcing some people alone to bear the burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). The "reasonableness of a seizure and demolition of nuisance property will ordinarily be established when the substantive and procedural safeguards inherent in state and municipal property standards ordinances have been fulfilled." Freeman v. City of Dallas, 242 F.3d 642, 654 n.17 (5th Cir. 2001). Because the Court now finds that the nuisance ordinances in question are constitutional and Defendants' actions complied with the requirements established in these ordinances, Defendants have not violated the Takings Clause in this instance.

stating he had ten days to abate the nuisance before the city took action. Compare McDonald II v. State, 693 S.W.2d 660 (Tex. - Dallas 1985) (upholding similar city nuisance ordinance on the grounds that it was not vague or overbroad). As the Supreme Court has stated, procedural due process under the federal constitution allows an individual whose property rights are affected to receive notice and an opportunity to be heard at a meaningful time. See Mathews v. Eldridge, 424 U.S. 319 (1976).

There is no doubt that the owner of a vehicle, whether it is a junk car or not, is afforded constitutional protection. The ordinances at issue in the present case, like that in Price, affords the individual ten days notice of the pending removal action. The ordinance also requires the city to notify by certified mail the last known registered owner of the vehicles. Defendants have provided the Court with unrefuted evidence that before any removal of the vehicles, the city complied with Section 94.43 and attempted to determine the owner of each vehicle by using the license plate number or the VIN. See Defendant City's Motion for Summary Judgment, Ex. A 2 [Dkt. No. 42]. Plaintiff has submitted no evidence that Defendants did not comply with the notice requirements of either Section 94.43 or 93.03 of the City Ordinances. Rather, Plaintiff simply asserts that he did not personally receive notice.

The city ordinances do not require that Plaintiff actually receive notice before the City may take an action. Section 93.05 states that "notice . . . shall be served personally on the owner to whom it is directed or shall be given by letter addressed to such owner at his last known post office address." The City's notification of Plaintiff's violations of Section 93.03 were effectuated by sending a letter to his last known address. Additionally, section 94.43 requires the City to notify the last known registered owner of the motor vehicles to be seized. Again, this ordinance does not require that the owner of the motor vehicles actually receive notice before the City may act to remove the junked vehicles. Indeed, if no motor vehicle deemed to be junk by the City or no nuisance could be abated unless the owner received actual notice, the City would often find itself in a position where it could not carry out its authority.

Finally, Plaintiff attempts to prove he was denied due process by demonstrating there exists a factual dispute over whether the vehicles in question were antiques as

9

opposed to junked vehicles.  As a result, Plaintiff argues that Defendants' removal of the "antique" vehicles was unreasonable.  This factual allegation is misplaced.  The question is not whether in fact the vehicles would be considered antiques, but rather whether the individual defendants in enforcing the city ordinances committed a constitutional violation.  Before they sent notice of a potential violation, the inspectors were not required by either the ordinance or the Constitution to determine with exact precision whether the vehicles were antiques before they initiated action.  Defendants provided evidence, however, in the form of affidavits and photo exhibits, which supported their reasoned conclusion that the vehicles in question were in violation of the city ordinance.  See Defendants' Motion for Summary Judgment, Ex. A-8, 10104-07, Ex. A-9, B-1-B-7.  These kinds of determinations do not leave the property owner without recourse because he may contest the removal of the property at a hearing.  Based on the evidence submitted by Defendants in which Mr. Roberts or someone purporting to be him signed the return receipt for the certified mail, the City's health inspectors carried out the removal efforts and cleanup with the understanding, even if misplaced, that Plaintiff had received notice, but had failed to request a hearing within the allotted ten (10) day period.  The actions of the Defendants were not, therefore, constitutionally infirm.  In short, the City made ample efforts to notify Plaintiff of the violations, and the City's reasonableness is fulfilled by its adherence to the ordinances and procedures under scrutiny in this case.

### V. Plaintiff's State Law Claims Against Defendants in their Official Capacities

Plaintiff brings state law claims for trespass, conversion, and negligence against the individually named defendants.  Official immunity for state law claims, like qualified immunity, is an affirmative defense, and protects the individual from the burden of suit and liability for damages.  See Cantu v. Rocha, 77 F.3d 795, 803 (5th Cir. 1996); DeWitt et al., v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995).  "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (citations omitted).  An action

is discretionary if the action "involves personal deliberation, decision and judgment," and an action is ministerial if it "require[s] obedience to orders or the performance of a duty to which the actor has no choice." See Wyse v. Department of Pub. Safety, 733 S.W.2d 224, 227 (Tex. App. – Waco 1986, writ ref'd n.r.e.). In Texas, the second element in the official immunity analysis, the "good faith" requirement, is derived from the objective test used in federal qualified immunity claims. Namely, a government employee acts in good faith when a reasonably prudent person, under similar circumstances, could have believed his conduct to be lawful in the context of clearly defined law and the information he possessed at the time. See Chambers, 883 S.W.2d at 656 (citing Swint v. City of Wadley, 5 F.3d 1435, 1441-42 (11th Cir. 1993)).

The party asserting official immunity need not establish that it would have either been unreasonable to act in a manner contrary to the official's actual actions or that all reasonably prudent officers would have acted in the same manner. See Cameron County v. Alvarado, 900 S.W.2d 874, 880 (Tex. App. -- Corpus Christi, 1995). The "elevated standard of proof" for the Plaintiff in this case means that he "must do more than show that a reasonably prudent officer could have acted in a certain manner." Chambers, 883 S.W.2d at 656. Rather, the Plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts." Id. (citations omitted). The final element of official immunity, the scope of authority, is determined by whether the official is "discharging the duties generally assigned to [him]." Id. at 658.

Trespass: With respect to the state law claim of trespass, Defendants have adequately demonstrated they were performing discretionary duties, which required that they exercise personal judgment. Their identification of a nuisance violation and determination that vehicles appearing to be junk vehicles on the property led to Defendants' decisions to enter the property and eventually notify Southern Pacific and attempt to notify Plaintiff of the violations. These decisions clearly demonstrate the use of discretion.

Furthermore, Dan Serna's affidavit adequately demonstrates the presence of good faith on the part of the city employees. Indeed, Plaintiff presents no evidence to refute the

exercise of good faith on the part of the City. In his affidavit, Mr. Serna provides a detailed account of the reasoning behind the City's decision to enforce the ordinances and take action to rid the property of the junked vehicles, rubbish, and debris. There are no "magic words" that an affidavit must contain. See Cameron County v. Alvarado, 900 S.W.2d 874, 881 (Tex. App. –Corpus Christi, 1995). See Defendants' Summary Judgment, Ex. A [Dkt. No. 42]. Additionally, the City submitted multiple photos of the property and questionable vehicles to support its determination that Plaintiff was in violation of the ordinances. See Defendants' Motion for Summary Judgment, Ex. A-8, 10104-07, Ex. A-9, B-1-B-7. Section 94.49 allows the Health Inspector to enter private property to inspect vehicles or parts, to obtain information concerning ownership of the vehicles, and to remove or initiate removal of those vehicles that have been determined to be a nuisance. Likewise, Section 93.06 authorizes the City to abate nuisance violations after proper notice is given. The ordinances at issue specifically authorize the Health Inspector to carry out and enforce the ordinances. Defendants, therefore, were acting within the scope of their authority in entering the property and removing those vehicles that were deemed to be a nuisance. Defendants have demonstrated they acted in good faith when they entered the property to enforce the city ordinances, and thus they are entitled to immunity from Plaintiff's trespass claim.

Conversion: Defendants similarly have demonstrated they acted reasonably and in good faith when they removed the vehicles from the property Plaintiff leased and disposed of them. Section 94.42 of the City Ordinance explicitly states the City may remove junked vehicles and dispose of the parts to a "scrap yard, demolisher, or any suitable site operated by the city for processing scrap or salvage." See Defendants' Motion for Summary Judgment, Ex. A-2 [Dkt. No. 42]. In following the City's ordinance, Defendants exercised their discretionary duties reasonably. Thus, they are entitled to immunity from Plaintiff's conversion claim.

Negligence: Finally, Defendants have demonstrated they are immune from Plaintiff's negligence claim for the same reasons articulated above: Defendants, in the course of carrying out their discretionary duties, acted reasonably and in good faith. Thus, they are entitled to immunity from Plaintiff's negligence claim.

12

Theft and Civil Conspiracy:  Plaintiff alleges a claim for civil conspiracy against Defendants.[6]  A civil conspiracy is not actionable unless there is an overt, unlawful act. See American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420-38 (Tex. 1997).  Additionally, there must exist an agreement among the defendants to subject the Plaintiff to a wrong or injury.  See Crowe v. ucas, 595 F.2d 985, 993 (5th Cir. 1979).  See also Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995) (quoting Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983)).  The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; (5) damages as the proximate result."  Massey, 652 S.W.2d at 934.  Because civil conspiracy is a derivative tort, Plaintiff must allege an underlying tort.

Plaintiff alleges both theft and a violation of his Constitutional rights under the Fourteenth Amendment.  Plaintiff, however, has presented no evidence of an overt unlawful act.  Nor does Plaintiff allege Defendants conspired to deprive him of his constitutional rights.  Plaintiff presents no evidence to refute that T & T Towing Service, La Feria Wrecker Service, and other wrecker services simply acted in response to the City's requests to remove vehicles from the property pursuant to the city ordinances.  The City, on the other hand, has presented evidence in the form of information sheets, which list the wrecker services employed to remove various vehicles from the property.  See Defendants' Summary Judgment, Ex. A8, 10094 [Dkt. No. 42].  Plaintiff submitted an affidavit in which he states Mr. Garcia, the owner of T & T Towing,[7] took a Ford Thunderbird and several trucks from the property including an International pick-up truck.  See Plaintiff's Motion for Summary Judgment, Ex. C, ¶ 9 [Dkt. No. 41].  Additionally, Plaintiff states in his affidavit that Jose Garcia is secreting his Ford Thunderbird, and Garcia has never, despite Garcia's

---

[6]Plaintiff alleges in his complaint that the wrecker companies and "junkyard defendants" "disposed of and converted Plaintiff's items, all pursuant to a conspiracy existing by and among the defendants."  See Plaintiff's Third Amended Complaint, at ¶ 30 [Dkt. No. 7].

[7]Plaintiff alleges Jose Garcia's business is "T & T Towing" and is also known as "Double A."  Mr. Garcia states in his affidavit that he does not own any business other than "T & T Wrecker Service" or "T & T Care Center."

protestations otherwise, informed Plaintiff that he could remove the vehicles from Garcia's property at any time.  See Plaintiff's Motion for Summary Judgment, Ex. C [Dkt. No. 41]. Plaintiff's affidavit, however, does not support a claim for conspiracy or theft, nor does it refute the City's evidence that it instructed multiple wrecker services to remove certain vehicles from the property.  In fact, Plaintiff has failed to even allege facts supporting an intent to deprive Plaintiff of his property at the time of the taking by the wrecker services. See Tex. Pen. Code Ann. § 31.03 (Vernon 2000); Thomas v. State, 753 S.W.2d 688, 694 (Tex. Crim. App. 1988).  Global assertions used to support general allegations of theft do not create a nexus between the facts alleged and the elements of civil conspiracy–namely that Defendants committed an unlawful act.  Without evidence that Defendants intended to deprive Plaintiff of his property, Defendants have demonstrated they were simply acting pursuant to the City's instructions.  The City in turn issued these instructions in the course of enforcing constitutionally sound city ordinances.  Without an overt, unlawful act, such as theft or a constitutional violation, Plaintiff has failed to establish a claim for civil conspiracy.  See American Tobacco, 951 S.W.2d 420-38 (Tex. 1997).

## VI. *State Law Claims Against the City of Harlingen*

Sovereign Immunity, contrary to official immunity, protects governmental entities from liability, and any waiver of such immunity is governed by the Texas Tort Claims Act. See DeWitt et al., v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995).  The Texas Tort Claims Act specifically exempts intentional torts from a waiver of governmental immunity. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-101.109 (101.057(2)) (Vernon 1997). Waiver of immunity is restricted to liability resulting from "any injury arising out of the use of publicly owned vehicles, premises defects, and conditions or use of property."  City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex. App. –San Antonio 1990, writ denied). See also TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997).[8]  Even liability,

---

[8]Section 101.021 of the Texas Tort Claims Act provides:
A governmental unit in this state is liable for:
(1) property, damage, personal injury, and death proximately caused by the

14

however, that falls under this subsection will not trigger waiver of the City's immunity if the claim arises out of an intentional tort. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) Dunn, 796 S.W.2d at 261. As Defendants point out, because claims for trespass, conversion, and conspiracy are intentional torts, the City has no liability for these alleged torts.

Plaintiff's negligence claim against the City likewise fails. Section 101.021(2) of the Texas Tort Claims Act establishes that a municipality, or governmental entity, may be liable under the doctrine of respondeat superior for an employee's negligence when the employee *does not* possess official immunity. See DeWitt, 904 S.W.2d at 651. Stated in the converse, if the government employee is entitled to official immunity for a claim arising under section 101.021(2), in this case negligence, the government entity is also entitled to such immunity  from liability because "that which excuses or justifies the [servant] will in like manner excuse and justify the [master]." McMurrey Corp. v. Yawn, 143 S.W.2d 664, 666 (Tex. Civ. App. – Texarkana 1940, writ ref'd). As determined in the preceding section, the individually named defendants have effectively asserted official immunity for Plaintiff's claim of negligence, and thus, the City cannot be vicariously liable for the acts of its employees. See K.D.F. v. Rex, 878 S.W.2d 589, 597 (Tex. 1994).

## VII. *Conclusion*

The summary judgment record demonstrates the City has acted in compliance with constitutionally valid city ordinances. The City, the Health Inspector, and other employees of the Health Department followed the procedures required for the removal of junk vehicles

---

wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
(B) the employee would be personally liable to the claimant according to Texas law; and
(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

and other debris constituting a nuisance under the city ordinances.  Defendants' Motions for Summary Judgment are **GRANTED** in their entirety [Dkt. Nos. 31, 37, 42].  Plaintiff's Motion for Summary Judgment is **DENIED** [Dkt. Nos. 41, 44, 45].  This order of summary judgment disposes of all remaining claims.  As a result of this order, the following motions are moot and are **DENIED without prejudice**:  Plaintiff's Motion to Extend Time to File Response [Dkt. No. 47]; Defendant La Feria Wrecker's Motion to Compel [Dkt. No. 63]; Defendant City of Harlingen's Motion to Compel [Dkt. No. 69]; Motion to Strike Designation of Expert Witness List [Dkt. No. 74]; Plaintiff's Motions for Continuance and Referral to Alternative Dispute Resolution [Dkt. Nos. 81 & 82].

DONE at Brownsville, Texas, this 5th day of March, 2003.

Hilda G. Tagle
United States District Judge

16